John CIONE, Plaintiff,

v.

Ivan GORR, et al., Defendants.

No. 3:93CV7329.

United States District Court,
N.D. Ohio, W.D.

Jan. 6, 1994.

John Timothy Murray, Sr., Dennis E. Murray, Jr., Murray & Murray, Sandusky, OH, for plaintiff.

John M. Newman, Jr., Stephan I. Voudris, Jones, Day, Reavis & Pogue, Cleveland, OH, for defendants.

## OPINION AND ORDER

JOHN W. POTTER, Senior District Judge.

This cause is before the Court on defendants' motion to dismiss, plaintiff's opposition, defendants' reply, defendants' supplemental reply brief, and plaintiff's supplemental. Plaintiff brought suit in this action alleging that defendants, Cooper Tire & Rubber Company and three of its principle corporate officers, Ivan W. Gorr, J. Alec Reinhardt and Patrick W. Rooney, committed securities fraud. Plaintiff's complaint pleads three causes of action against each of the defendants: count one alleges violations of Rule 10b–5[1] and § 10(b)[2] of the Securities Exchange Act of 1934; counts two and three repeat the same allegations and charge common law fraud and negligent misrepresentation. Defendants have moved for dismissal for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6).

 The purpose of a 12(b)(6) motion is to allow a defendant to ask a court to examine the plaintiff's allegations and determine whether, as a matter of law, the plaintiff is entitled to relief. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993). In deciding a motion to dismiss, the court must accept as true all factual allegations in the complaint. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir.1990). If any of the allegations are ambiguous or capable of more than one inference, they should be construed in plaintiff's favor. *Mayer*, 988 F.2d at 638. The court, however, need not accept as true any legal conclusions or unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. *Id.*

The facts in this case, as alleged by the plaintiff,[3] are as follows. Plaintiff charges that the defendants, over a period of several months, publicly portrayed the financial and operating conditions and future prospects of Cooper Tire in a falsely optimistic fashion. These public statements and omissions allegedly perpetrated a "fraud on the market"; that is, they falsely inflated the price of Cooper Tire stock paid by the plaintiff. The course of conduct complained of took place between February 15 and June 7 of 1993.

On February 15, Cooper Tire reported its fourth quarter 1992 and yearly results. These results showed a net sales increase and a net income increase for the year. Plaintiff does not contest the veracity of these results. In conjunction with the 1992 results defendant Gorr stated:

> [The company's] plants continued at high levels of capacity utilization and the company retained its growth trends in operations in both tires and engineered products. Cooper employees produced and sold more product than any time in our history, and we expect our growth in sales and profitability to continue as we move through 1993 and into the future.

The 1992 Annual report contained the same information, also reported a sales record, and stated that

> [a]s a replacement tire supplier, Cooper anticipates continued strong demand for

---

1. "It shall be unlawful for any person ... [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in light of the circumstances under which they were made, not misleading ... in connection with the purchase or sale of any security."

2. "[It is] unlawful for any person ... [to] use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate...." 15 U.S.C. § 78j(b) (1989).

3. The facts and statements in this cause are all taken as pleaded in plaintiff's complaint.

tire products. The number of vehicles in use and the number of miles driven annually continues to increase. Also, the average age of a U.S. passenger car is approximately eight years, indicating a continuing strong market for replacement tires.... High levels of capacity utilization and strong customer demand continued for the Company's tires and engineered rubber products."

In an accompanying Letter to Shareholders, defendants Gorr and Rooney stated:

The Company's year-end financial picture is excellent and continues the strength of the prior years.... The market for replacement tires is solid with more vehicles and older vehicles on the road and with more use of cars and trucks for recreation and work. Also, with the expected upturn in the economy, opportunities should expand for sales of engineered products as North American light vehicle production increases. We are poised to take full advantage of these opportunities.

On March 24, defendants filed the required form 10k with the SEC, which incorporated the 1992 annual report.

On April 19, defendants announced Cooper Tire's operations results for the first quarter of 1993. They reported increases in sales and earnings over the first quarter of 1992. In conjunction with the first quarter results, defendant Gorr stated that:

The markets for tires and engineered rubber products were firm and we increased sales in both product categories. Our inventory levels in tires have been rebuilt and are again adequate to provide outstanding customer service as we enter the second and third quarter selling seasons. The Cooper team is now looking forward to the opportunities which will be provided by a steadily improving national economy.

On May 5, Cooper filed its first quarter Form 10–Q, which repeated the same information.

At the annual shareholder meeting on May 4, defendant Rooney stated that "[a]s a company, we're well positioned for long-term growth." Defendant Reinhardt discussed the Company's history of dividend increases for the prior thirteen years. Defendant Gorr stated that "[w]e can stand toe-to-toe with the competition ... we can continue to grow and prosper." Other reports at the meeting stated that "the company is well positioned in its long-term strategy for continued growth"; "reports indicated that operations were very strong during the year as the company opened new customers for its proprietary brands"; and "[t]he financial strength of the company continues to be excellent ... and the company continued to generate excellent returns for stockholders."

Cooper Tire's strong performance ended on June 7, when it announced that it expected second quarter sales and earnings to fall short of the prior year's results. Defendant Gorr stated that Cooper "knew that meeting the prior year exceptional sales and earnings would be a challenge ... [h]owever, with only one month remaining in the quarter we are not apt to meet that goal." Cooper Tire also announced that:

[t]he industry is experiencing a general softness in demand for replacement tires. Demand for our replacement tire products has been mixed, but trending weaknesses seem to echo the general industry. Uncertainty exists regarding replacement tire demand for the remainder of the year as the consumer seems concerned regarding overall economic conditions.

Subsequently, the share price of Cooper Tire stock fell 24%. This lawsuit followed.

■ Plaintiff does not take issue with any of the statements made by the defendants concerning Cooper Tire's past performance, and the Court will assume their veracity. Rather, plaintiff argues that these factual representations of past success coupled with general predictions of future performance constituted misrepresentations and that defendants omitted facts known to them that would have more accurately portrayed Cooper Tire's prospects. This Court disagrees and, for the reasons that follow, dismisses all three of plaintiff's claims.

■ The elements of a federal securities claim are fairly well settled. To establish a Rule 10b–5 violation the plaintiff must prove (a) a misrepresentation or omission by the

defendant; (b) that misrepresentation or omission was material; (c) a purchase or sale of a security in connection with the fraudulent device; (d) scienter on the part of the defendant; (e) justifiable reliance by the plaintiff on the defendants' statements, or fraud on the market; and (f) damages that were causally related to the misrepresentation or omission. *Platsis v. E.F. Hutton & Co.*, 946 F.2d 38, 40 (6th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1669, 118 L.Ed.2d 389 (1992).

Both plaintiff and defendants make numerous arguments and cite an impressive array of cases in support of their respective positions, but the Court finds the question of the materiality of the pleaded statements dispositive in the case at bar. However, before proceeding to the materiality issue, a brief discussion of fraud on the market is warranted. There is a certain degree of overlap between the two concepts, and there is apparently some confusion as to what standards are controlling. In particular, defendants argue that the "market makers" or professional investors are the appropriate benchmark for determining materiality in cases that proceed under the fraud on the market theory. Defendants misread *Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), however, and confuse materiality with fraud on the market.

Fraud on the market is a legal mechanism which functions as a substitute for reliance in securities fraud cases. It is particularly useful to plaintiffs in securities class actions, where it would be inconvenient, if not impossible, for the plaintiffs to prove actual reliance on the alleged misrepresentations or omissions. Embraced by the Supreme Court in *Basic*, fraud on the market theory assumes a causal connection between the alleged fraud and the price of the stock at the time of purchase. In an impersonal, developed and efficient market where a buyer relies on market price integrity, it is presumed that the fraudulent information is transmitted to the buyer in the form of an inflated purchase price. Fraud on the market thus creates the presumption of reliance. *Basic*, 485 U.S. at 244, 108 S.Ct. at 990. The defendant can rebut this presumption by showing that the "market makers" or professional investors were not taken in by the misrepresentation.[4] *Id.* at 248, 108 S.Ct. at 992. If the market makers were not deceived, then the misrepresentation would have no effect on the share price, and there would be no "fraud on the market."

The use of the "market maker" in rebutting the fraud on the market presumption can be contrasted with the relevant audience used in determining materiality: the reasonable investor. In *Basic*, the Supreme Court appropriated the § 14(a) standard of materiality for use in the 10b–5 setting: "there must be a substantial likelihood that the disclosure of the omitted fact [or misrepresentation] would have been viewed by the **reasonable investor** as having significantly altered the total mix of information made available." *Id.* at 231–32, 108 S.Ct. at 983–84 (citations omitted) (emphasis added). Thus the reasonable investor standard is appropriate in determining materiality, and the market maker standard is only relevant when attempting to rebut the fraud on the market presumption of reliance. While there is a certain amount of redundancy in the two requirements, the Supreme Court has been quite clear and consistent in its use of the reasonable investor standard in the materiality context. *See Basic*, 485 U.S. at 248, n. 27, 108 S.Ct. at 992, n. 27 (discussing the similarity in the reliance and "reasonable investor" materiality elements).

Having determined that the reasonable investor standard should be applied to the materiality issue in the present case, our inquiry must next focus on the application of the materiality standard to the facts of this controversy. The parties urge the Court to decide this dispute under the authority of either *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037 (6th Cir.1991), or *Mayer v. Mylod*, 988 F.2d 635 (6th Cir.1993). Both *Sinay* and *Mayer* offer the Court some guidance; however, neither are directly analogous to the

4. The Court notes that the Supreme Court mentions other methods to rebut fraud on the market, such as showing that the plaintiff did not rely on market price integrity. The rebuttal of the fraud on the market presumption is not relevant to our discussion at this point.

case at bar and, thus, are not dispositive. Similarly, *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991), while instructive, does not deal with the materiality issue before this Court.

In *Virginia Bankshares,* the Supreme Court held that statements of opinion or belief can be statements of fact as defined by Rule 14(a)–9. The Court did not hold that all statements of opinion and belief are material as a matter of law; rather, the materiality of such statements is a separate inquiry. In *Virginia Bankshares,* the Court assumed that the statements in question were material, because they were statements by corporate directors endorsing a particular course of action in a proxy vote. *Id.,* 500 U.S. at ——, 111 S.Ct. at 2757 ("we think there is no room to deny that a statement of belief by corporate directors about a recommended course of action, or an explanation of their reasons for recommending it, can take on just that importance").

Shortly after the *Virginia Bankshares* opinion was handed down, the Sixth Circuit in *Sinay* was presented with the question of whether economic projections are actionable under Rule 10b–5. In *Sinay,* the statements in dispute were made through press releases and the defendants' company spokesmen. Lamson, a company officer, stated that the Company's performance in the first three quarters of 1988 was "gratifying," that the company was experiencing a "seasonal decline" which would last into the "first quarter of 1989," that the company did "not quarrel with analysts earnings estimates for 1989 of $1.50 to 1.60" per share, that the company was counting on "new products to offset a weaker construction market for 1989," and that the company planned to continue to develop its position in the domestic and worldwide market. *Sinay,* 948 F.2d at 1039.

The Sixth Circuit, in affirming the district court's 12(b)(6) dismissal, adopted the "bespeaks caution" doctrine; that is, economic projections are not actionable if they are couched in sufficient cautionary language. *Id.* at 1040. If read broadly, this holding may seem inconsistent with the Supreme Court's earlier decision in *Virginia Bank-*

*shares.* A further consideration of *Sinay,* however, reveals that the two decisions are reconcilable.

*Virginia Bankshares* stands for the proposition that statements of opinion by corporate officers recommending a particular course of action are statements of facts and, thus, are actionable if material. *Virginia Bankshares,* 501 U.S. at ——, 111 S.Ct. at 2757–58. Conversely, *Sinay* only dealt with the materiality of the statements in question and held that the statements before the court were not actionable because the cautionary language made the statements "hardly the type of statement that would mislead a reasonable investor" and, thus, not material. *Sinay,* 948 F.2d at 1041. *See also Virginia Bankshares,* 501 U.S. at ——, 111 S.Ct. at 2760 (sufficient true statements can make false ones unimportant and immaterial). Thus, in the 12(b)(6) context *Sinay* stands for the proposition that cautionary statements may make a statement immaterial if the reviewing court finds that sufficient cautionary language would not cause a reasonable investor to be misled. This reading of *Sinay* is reinforced by that decision's directive that courts should analyze the nature of the statements in question and determine whether the predictions suggested reliability, bespoke caution, or had a sound factual or historical basis. *Sinay,* 948 F.2d at 1040.

The other Sixth Circuit decision which speaks, albeit not directly, to the present controversy is *Mayer v. Mylod,* 988 F.2d 635 (6th Cir.1993). In *Mayer,* the defendants stated that the defendant bank's loan portfolio was "soundly underwritten," that the share value was "fairly reflected on the balance sheet," that the bank's buy-back of its own stock was a "good investment," and that a 50% drop in share price was not warranted by the status of the bank's nonperforming loans. The plaintiffs alleged that these statements were false when made and further claimed that the bank's financial statements were incorrect and that an adverse five million dollar judgment was not reflected in the bank's financial reports. *Id.* at 636–37.

Citing *Virginia Bankshares,* the court held that statements of opinion and belief can be actionable if (a) they were not factually well-

grounded, and (b) the speaker did not believe the opinion expressed. *Id.* at 639. Thus, the primary *Mayer* holding addressed the misrepresentation and scienter elements of a 10b–5 cause of action, but not materiality. The *Mayer* court reversed the district court's dismissal because the appellate court feared the district court may have read *Sinay* too broadly, and mistakenly interpreted that opinion as holding that statements of opinion that speak caution are unactionable as a matter of law. *Mayer* explained and clarified *Sinay*, but did not purport to overrule it.[5] The *Mayer* court then went on to determine that the statements at issue were material because they related to hard information, such as loan values and balance sheets, and because the plaintiffs had alleged that factual statements made by the defendants were false. *Id.* at 640.

The criteria by which materiality is evaluated, then, is quite clear. Whether or not a statement is material, that is, whether there is a substantial likelihood that the statement or omission would be viewed by the reasonable investor as having significantly altered the total mix of available information, depends on the facts of each individual case. *Basic*, 485 U.S. at 231–32, 238, 108 S.Ct. at 983–84, 986. Materiality is a mixed question of law and fact and is appropriately decided as a matter of law if reasonable minds could not differ on the issue. *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). The court should balance the indicated probability that the predicted event will occur, the magnitude of the event, and the nature of the statement. *Basic*, 485 U.S. at 238, 108 S.Ct. at 986; *Sinay*, 948 F.2d at 1040.

While there are no Sixth Circuit cases that speak directly to the materiality issue before this Court, the Fourth Circuit, in *Raab v. General Physics Corp.*, 4 F.3d 286 (4th Cir.

1993), on facts virtually identical to the case at bar, upheld the dismissal of a 10b–5 action because the alleged statements were not material. The defendant in that case had announced record earnings, stated that the company was "poised to carry the growth and success of 1991 well into the future," and "expected an annual growth rate of 10% to 30% over the next several years." *Id.* at 288.

The Fourth Circuit held that dismissal was proper because:

> Such predictions as [defendant] did make in its Annual Report about future growth are hardly material.... "Soft," "puffing" statements such as these generally lack materiality because the market price of the share is not inflated by vague statements predicting growth.... The whole discussion of growth is plainly by way of loose prediction.... No reasonable investor would rely on these statements....

*Id.* at 289. The court went on to say that projections regarding future performance that are not stated as guarantees generally do not state a claim under federal securities laws. *Id.* at 290. *See also Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1446 (5th Cir.1993); *Friedman v. Mohasco Corp.*, 929 F.2d 77 (2nd Cir.1991).

The facts and statements in *Raab* and the present controversy stand in contrast to those in *Virginia Bankshares* and *Mayer*. In *Virginia Bankshares* the fact that corporate officers were recommending a particular course of action in a proxy vote made their statements material. In *Mayer*, plaintiffs presented a *prima facie* case of materiality because the statements at issue made reference to hard information about the defendant's current condition, such as loan values, stock value, and balance sheets, and because plaintiffs had alleged that many of these statements of past fact were false, and that the defendants concealed the deteriorated

---

**5.** The Court is aware that both plaintiff and defendants argue that *Sinay* and *Mayer* are contradictory, and that one or the other controls the case at bar. *See, e.g., Salmi v. Secretary of Health & Human Services*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court

requires modification of the decision or this Court sitting *en banc* overrules the prior decision."). However, as this Court reads the *Sinay* and *Mayer* holdings as being consistent with each other and *Virginia Bankshares*, we need not reach the issue of which Sixth Circuit decision is controlling even if appropriate to do so by a district court.

quality of their loan portfolio. *Virginia Bankshares* and *Mayer* are clearly distinguishable from the facts before this Court, where defendants are alleged to have made true statements about past performance in conjunction with general forecasts of future success.

In light of these cases and our discussion of materiality, this Court holds that, as a matter of law, the statements at issue in this case do not meet the definition of materiality as set forth by the Supreme Court. The statements speak of past factual operational results and, unlike the plaintiff in *Mayer*, there are no allegations here that these statements are in anyway incorrect. To argue that the statements are misleading because the true statements of past performance somehow paint a falsely optimistic picture of the future reaches too far. Business by its nature is cyclical, and such logic could make any statement of past success actionable subsequent to a company's economic downturn.

Even the coupling of defendants' truthful statements of past facts with generic expression of optimism about Cooper Tire's future performance does not raise these statements to the level of materiality. "We expect our growth in sales and profitability to continue," "[we] anticipate continued strong demand for tire products," "opportunities should expand," "we're well positioned for long-term growth," and "[t]he Cooper Team is now looking forward to the opportunities which will be provided by a steadily improving national economy" hardly contain the type of event-specific information and guarantees necessary to make prognostications of future success material. *See e.g., Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1446 (5th Cir.1993); *Howard v. Haddad,* 962 F.2d 328, 331 (4th Cir.1992); *Lewis v. Chrysler Corp.,* 949 F.2d 644, 652–53 (3rd Cir.1991). The statements simply do not have any indicia of probability and are not specific enough to have a substantial likelihood of altering the total mix of information available to a reasonable investor. *See, e.g., Basic,* 485 U.S. at 238, 108 S.Ct. at 986. No reasonable investors would rely on these general "puffing" statements.

In examining any federal securities law claim, it is important that a court not lose sight of the policies behind the law. The 1934 Act was intended to protect investors against unfair manipulation of stock market prices. *See* S.Rep. No. 792, 73d Cong., 2d Sess., 1–5 (1934). The statements at issue here are incapable by their nature of effecting any manipulation of defendant's share price. In furthering congressional intent by allowing private causes of actions under the federal securities law, the Supreme Court recognized the dangerous effect that frivolous suits could have on the securities market. In its first formulation of the modern materiality standard, the Supreme Court rejected some lesser measures being used by several appellate courts and adopted a meaningful definition of materiality. *See e.g., TSC Industries,* 426 U.S. at 448, 96 S.Ct. at 2132 ("if the standard of materiality is unnecessarily low, not only may the corporation and its management be subjected to liability for insignificant omissions or misstatements, but also managements' fear of exposing itself to substantial liability may cause it simply to bury the shareholders in an avalanche of trivial information ..."). The stock market is fraught with risk, and the federal securities laws are not intended to be investment insurance.

In addition to the federal claims, plaintiff has also asserted supplemental state law claims for fraud and negligent misrepresentation. Pendent state claims may be dismissed if the federal claims are dismissed prior to trial. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Therefore, plaintiff's state law claims are dismissed without prejudice.

THEREFORE, for the foregoing reasons, good cause appearing, it is

ORDERED that defendants' motion to dismiss be, and hereby is, GRANTED.