**In re SYNTEX CORP. SECURITIES LITIGATION.**

**This Document Relates to All Actions.**

**Civ. No. 92–20548 SW.**

United States District Court,
N.D. California.

May 27, 1994.

---

William S. Lerach, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Eugene A. Spector, Spector & Roseman, P.C., Philadelphia, PA, Richard S. Schriffrin, Schriffrin & Craig, Bala Cynwyd, PA, for plaintiffs Arthur M. Rosenbaum and Richard Gorosh, on behalf of himself and all others similarly situated.

Jan M. Adler, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, for plaintiff Judy Wynne.

Joyce M. Cartun, Heller, Ehrman, White & McAuliffe, San Francisco, CA, M. Scott Donahey, David R. Foley, Holtzman, Wise & Shepard, Palo Alto, CA, for defendants Syntex Corp., Paul E. Freiman, James N. Wilson and John Fried.

Patricia H. Lyon, Buchalter, Nemer, Fields & Younger, San Francisco, CA, for defendant Marvyn Carton.

Helane L. Morrison, Howard, Rice, Nemerovski, Canady, Robertson, Falk & Rabin,

San Francisco, CA, Robert H. Werbel, New York City, for defendant Allen & Co. Inc.

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION TO STRIKE; GRANTING MELVIN BOOTH AND THOMAS HOFFMEISTER'S MOTION TO DISMISS; GRANTING MARVYN CARTON'S MOTION TO DISMISS

SPENCER WILLIAMS, District Judge.

Plaintiffs allege in this class action lawsuit that Syntex Corp. and its directors and officers ("Defendants") defrauded investors in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5 (1993), promulgated thereunder, by creating and maintaining the image of a successful company through the issuance of positive public statements and projections in press releases and other statements to the financial community, when in fact, the outlook for the company's products was poor. Plaintiffs also seek to hold Defendants liable for these misstatements and omissions under § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t. Defendants Syntex, Paul Freiman, James Wilson, John Fried, Thomas Gutshall, Melvin Booth and Thomas Hoffmeister now move to dismiss Plaintiffs' Consolidated Amended Complaint and alternatively, for partial summary judgment. In response, Plaintiffs move to strike declarations Defendants filed in support of their motion for partial summary judgment. Defendants Melvin Booth and Thomas Hoffmeister also move to dismiss on the ground that Plaintiffs' claims against them are barred by the statute of limitations. Finally, Defendant Marvyn Carton moves to dismiss, adopting the arguments of the other defendants and presenting additional arguments that are specific to his position as an outside director of Syntex. For the reasons expressed below, all Defendants' motions to dismiss are GRANTED and Plaintiffs' claims are DISMISSED WITH PREJUDICE; Defendants' motion for partial summary judgment is DENIED; and Plaintiffs' motion to strike is DENIED.

## BACKGROUND

Syntex, a Panamanian corporation headquartered in Palo Alto, California, is an international health care company involved in the research, development, manufacture and marketing of pharmaceuticals. Syntex derives most of its earnings (65% in fiscal 1991) from the sale of Naprosyn, a drug used to treat arthritis pain and inflammation. The company's patent on Naprosyn expired in December 1993, exposing the drug to competition from generic substitutes.

Plaintiffs allege that during the last half of 1991 and throughout 1992, Syntex's top managers were under pressure to boost the price of the company's stock as high as possible and to maintain it at inflated levels. Two factors were apparently responsible for this pressure. First, in recent years, Syntex was frequently mentioned as a potential takeover candidate, and managers feared they would lose their jobs if such a takeover would occur. Second, the managers were allegedly motivated by the financial incentives they had as owners of Syntex stock and options to purchase substantial numbers of shares at favorable prices.

According to Plaintiffs, Syntex's managers could not raise and maintain the price of the company's stock without overcoming securities analysts' and the investing public's concern that Syntex's ability to continue to achieve profitable growth during the 1990s would be impaired by the expiration of its Naprosyn patent. To accomplish this goal, Plaintiffs allege that Defendants concealed and misrepresented the true impact this development would have on Syntex's profitability in the 1990s. In addition, Defendants are alleged to have misrepresented the company's prospects for obtaining FDA approval of over-the-counter Naprosyn and the demand for and benefits of two other new Syntex products, Oral Toradol, a non-narcotic pain killer, and Ticlid, a stroke preventative. In this regard, Defendants allegedly misrepresented to investors that the new drugs would

offset any of the profits lost due to the decline in prescription Naprosyn sales, even though the Defendants had information at the time indicating that safer and more effective products already on the market would limit their use and acceptance. Finally, Plaintiffs allege that Syntex misrepresented the effect of a consent decree it entered with the FDA concerning the company's promotion of Naprosyn.

Plaintiffs claim that because of the rosy picture Defendants painted for the company, the price of Syntex's stock increased from $38-¼ per share in late November 1991, to a peak of $54-⅛ per share in mid-January, 1992. On May 26, 1992, the company announced that its earnings for its third quarter fiscal 1992 had declined. Over the next several days, the price of the stock fell from $43-⅝ per share to $35-⅜. In an attempt to cushion the effects of this report, Syntex allegedly continued to make false positive representations about the company's future earnings. However, after the company revealed disappointing 1992 fourth quarter sales estimates in August, the stock fell to $29-⅜.

In addition to the misrepresentation and nondisclosure claims, Plaintiffs allege that several of the Defendants sold shares of their Syntex stock for proceeds in excess of $3 million in violation of federal securities laws.

On September 1, 1993, this Court dismissed Plaintiffs' First Amended Complaint with leave to amend because (1) Plaintiffs' claims that were based on misinformation contained in the analysts' reports were not sufficiently plead; and (2) the documents cited in the complaint accurately disclosed the information Plaintiffs allege that Defendants misrepresented or omitted. Plaintiffs filed a Second Amended Complaint on November 30, 1993.

## DISCUSSION

### I. THE LAW

#### A. Legal Standard on a Motion to Dismiss

■ Under the liberal federal pleading policies, a plaintiff need only give defendant fair notice of the claims against it. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). A claim should not be dismissed unless it is certain that the law would not permit the requested relief even if all of the allegations in the complaint were proven true. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987), *cert. denied*, 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987). Therefore, for purposes of this motion to dismiss, the Court assumes the truth of all factual allegations in the complaint as well as all reasonable inferences drawn from them.

■ In deciding a motion to dismiss, the court is not limited by the allegations contained in the complaint if the complaint is accompanied by attached documents. Such documents are deemed part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim. *Durning*, 815 F.2d at 1267. The court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994), *petition for cert. filed*, 62 U.S.L.W. 3575 (Feb. 17, 1994) (No. 93–1327).

### B. Rule 10b–5 Actions

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, makes it unlawful to use, in connection with "the mails or facilities of interstate commerce" any "manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe...." Rule 10b–5 promulgated under section 10(b) provides as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of circum-

stances under which they were made, not misleading, or

> (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1993).

Despite the fact that Rule 10b–5 says nothing about intent to defraud or knowledge of falsity, the Supreme Court has ruled that recovery in a private Rule 10b–5 lawsuit requires proof of the defendant's scienter. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976); *see also Aaron v. SEC*, 446 U.S. 680, 690, 100 S.Ct. 1945, 1952–1953, 64 L.Ed.2d 611 (1980) (scienter also required in lawsuit brought by SEC). The *Hochfelder* Court defined this scienter as "a mental state embracing intent to deceive, manipulate, or defraud." *Hochfelder*, 425 U.S. at 194, n. 12, 96 S.Ct. at 1381, n. 12.

## II. ANALYSIS

> A. Defendants Syntex Corporation, Paul E. Freiman, James N. Wilson, John Fried, Thomas Gutshall, Melvin Booth and Thomas Hoffmeister's Motion to Dismiss and Alternative Motion for Partial Summary Judgment

### 1. Introduction

In support of their motion to dismiss, Defendants argue that (1) the misrepresentations and omissions alleged in the Second Amended Complaint are not actionable; and (2) Plaintiffs have not sufficiently alleged facts to support their claims that Defendants adopted analysts' reports containing misrepresentations and omissions. Defendants also argue that Plaintiffs' attempt to enlarge the class period with new allegations is barred by the statute of limitations.

### 2. The Company's Own Statements or Omissions

Defendants' argument that the misrepresentations and omissions alleged in the Second Amended Complaint are not actionable is two-pronged. First, Defendants contend that the statements they are alleged to have omitted are predictions about the future and not about existing, undisclosed facts. Second, they maintain that Plaintiffs have not adequately plead fraud.

■ As to the first prong of Defendants' argument, a company has no duty to disclose internal forecasts which are not "material, actual facts." *In re VeriFone Sec. Litig.*, 11 F.3d 865, 869 (9th Cir.1993). According to Defendants, the omissions about which Plaintiffs complain are not of "actual facts," but of forecasts and conclusions based on facts that were known in the market, which *VeriFone* held are not actionable.

■ Plaintiffs contend that Defendants have mischaracterized their allegations and that properly read, their complaint alleges that Defendants made forecasts and projections while in the possession of adverse facts which they concealed from investors. Projections and general expressions of optimism can be actionable under Rule 10b–5. *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir.1989), *cert. denied*, 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990). A projection or statement of belief may be actionable to the extent that one of the following three implied factual assertions is inaccurate: "(1) that the statement is genuinely believed; (2) that there is a reasonable basis for that belief; and (3) that the speaker is not aware of any undisclosed facts tending to seriously undermine the accuracy of the statement." *Id.* However, an exception to this rule excuses a defendant's failure to disclose material information where that information has entered the market. *Id.* at 1115. Defendants may not seek refuge in this exception when the information has not been widely circulated, however. The information "must be transmitted to the public with a degree of intensity and credibility sufficient to effectively counter-balance any misleading impression created by the insiders' one-sided representations." *Id.* at 1116. Furthermore, to be actionable under federal securities laws, the statements must be material and of the type upon which a reasonable investor would rely. *Kowal v. MCI Communications*, 16 F.3d 1271, 1276–1277 (D.C.Cir. 1994); *In re Software Publishing Sec. Litig.*,

[Current Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,094 at 98,759, 98,761, 1994 WL 261365 (N.D.Cal. Feb. 4, 1994). Soft or "puffing" statements are not sufficient to give rise to liability. *Raab v. General Physics Corp.*, 4 F.3d 286, 289 (4th Cir.1993); *Alfus v. Pyramid Technology Corp.*, 745 F.Supp. 1511, 1519 (N.D.Cal.1990).

Each of Plaintiffs' allegations will be evaluated to determine which of these doctrines apply and whether it states a claim under Rule 10b-5.

### a. The FDA Consent Decree

■ In October 1991, Syntex entered into a consent decree with the FDA agreeing to make corrections in its advertisements for Naprosyn. When the consent decree was announced, Plaintiffs quote Defendants as stating that it "should not have a material adverse effect on the results of operations." 2nd Comp. ¶¶ 2, 48. According to Plaintiffs, Defendants made this statement knowing that the consent decree would adversely affect Syntex's marketing of Naprosyn and the company's ability to show profits. To support this allegation, Plaintiffs point to internal admissions that the consent decree could hinder the company's ability to maintain growth in Naprosyn sales. According to Plaintiffs, this information eventually led the company to revise downward its internal forecasts for the sales and profits generated by Naprosyn.

Plaintiffs' allegation about Defendants' consent decree announcement does not state a claim for relief under § 10(b). In its Order of September 1, 1993, this Court concluded that the market was fully apprised of Naprosyn's marketing environment, and that Defendants had "disclosed hard data about the characteristics of its products (both positive and negative) and sales levels" in the documents Plaintiffs used to form the basis of the First Amended Complaint. Order of September 1, 1993, at 16. Using the factual data in the market, the investing public could reach its own conclusions about the impact the consent decree would have on Naprosyn sales and the company.

Plaintiffs point to no allegation to change this conclusion. They do not allege that the terms of the consent decree were unavailable to the market or that Defendants misrepresented the terms; nor do they allege any specific facts that Defendants had in their possession at the time the announcement was made to call its accuracy into question. Rather, Plaintiffs' allegations are based on internal memoranda dated at least three months *after* the announcement was made. 2nd Comp. ¶ 48. Given the timing of these memoranda, they cannot serve as the basis of a claim under § 10(b). *See VeriFone*, 11 F.3d at 871 ("[t]he fact that a prediction proves to be wrong in hindsight does not render the statement untrue when made"). Moreover, Naprosyn sales in the United States increased during the fiscal year in which the consent decree was in effect—from $665.4 million in fiscal 1991 to $759.9 million in fiscal 1992. Cartun Decl., Ex. 1 at 7 (Syntex Corp. 1991 Annual Report); Cartun Decl., Ex. 6 at 8 (Syntex Corp. 1992 Annual Report). Thus, any of Defendants' statements that could be construed as predictions proved to be accurate.

Since Plaintiffs' allegations about the consent decree announcement concern forecasts they claim the company should have made and failed to do, they are not actionable. *See VeriFone*, 11 F.3d at 869.

### b. Oral Toradol

■ Plaintiffs also allege that Defendants misrepresented the market for and physician acceptance of Oral Toradol and the revenue growth and profits the drug would produce for Syntex. *See, e.g.,* 2nd Comp. ¶¶ 70(f), (j), (m), (p). Specifically, Plaintiffs allege that Defendants represented that Oral Toradol and other Syntex drugs would enable the company to achieve earnings per share growth throughout fiscal 1992 and beyond even though they knew at the time that physicians were hesitant to prescribe the drug and that it was at a competitive disadvantage with existing products.

This allegation also fails to state a claim. For one, it is based on the theory that the Oral Toradol's characteristics were not disclosed to the market. However, in its Order of September 1, 1993, this Court concluded that the company reported sales levels for the drug and disclosed its side effects and

recommended uses. Order of September 1, 1993, at 14. Because the company disclosed these facts, which Plaintiffs never allege were inaccurately disclosed, it had no duty to make the forecasts Plaintiffs claim it failed to do. These alleged "omissions" are akin to the ones held not actionable in *VeriFone*. *See VeriFone*, 11 F.3d at 869. In addition, given that the hard data had been accurately reported, the optimistic statements on which the Second Amended Complaint is based are immaterial and too vague to have caused a reasonable investor to rely on them. For example, Plaintiffs note that Defendant Paul E. Freiman, Chairman of the Board and Chief Executive Officer, represented that " '[w]e're doing well and I think we have a great future,' " " '[b]usiness will be good this year ... [w]e expect the second half of fiscal 1992 to be stronger than the first half, and the latter part of the second half to be stronger than the first ...,' " " '[e]verything is clicking [for the 1990s] ... [n]ew products are coming in a wave, not in a trickle ... [o]ld products are doing very well' " and that " 'I am optimistic about Syntex's performance during this decade.' " 2nd Comp. ¶ 6. These statements are nothing more than "puffing," which reasonable investors know do not guarantee future success. *See Kowal*, 16 F.3d at 1276–1277; *Cione v. Gorr*, 843 F.Supp. 1199, 1200 (N.D.Ohio 1994); *Software Publishing*, [Current Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,094 at 98,759; *Borow v. nView Corp.*, 829 F.Supp. 828, 835 (E.D.Va.1993). Finally, Plaintiffs' Second Amended Complaint alleges that Defendants anticipated large sales of Oral Toradol. 2nd Comp. ¶ 60(h). This allegation nullifies Plaintiffs' claim that Defendants' statements were made with the necessary scienter.

### c. Ticlid Sales

Plaintiffs also allege that Syntex failed to disclose that the company's first shipments of Ticlid to wholesalers were automatic and not the result of end user demand. 2nd Comp. ¶ 70(h). However, they presented no opposition to Defendants' contentions that the market was aware of this arrangement.

### d. Future Sales and Profits from Over-the-Counter Naprosyn, Ticlid and Oral Toradol

██ According to Plaintiffs' Second Amended Complaint, Defendants had no reasonable basis for stating that the company's new drugs, over-the-counter Naprosyn, Oral Toradol and Ticlid, would offset the profits lost after the Naprosyn patent expired in December 1993. 2nd Comp. ¶ 66(m).

This allegation does not state an actionable claim. In its Order of September 1, 1993, this Court stated:

> Plaintiffs allege that Syntex failed to disclose that Naprosyn profits were likely to decline sharply due to pressure from competitors' products. Despite this allegation, Plaintiffs cite no Syntex statement that its new drugs would "offset" the potential reduction in profits due to declining Naprosyn sales. Absent such a statement, Syntex had no duty to disclose that sales of the new drugs would not offset the potential reduction in profits.

*Id.* at 15. Plaintiffs point to no allegation in the Second Amended Complaint to challenge this conclusion. The only statements Plaintiffs cite concerning their "offset" misrepresentation allegation are those which were made by analysts. *See, e.g.,* 2nd Comp. ¶¶ 7, 65, 70.

██ Plaintiffs also allege that Defendants did not disclose that it would be several years before Syntex realized profits from over-the-counter Naprosyn. 2nd Comp. ¶¶ 66(d), 70(e). However, this "omission" does not run afoul of Rule 10b–5 because it is exactly the type of information *VeriFone* held need not be disclosed. *VeriFone*, 11 F.3d at 869. Furthermore, Plaintiffs' allegation that Defendants possessed "internal corporate data known only to them" comes nowhere close to satisfying Fed.R.Civ.P. 9(b). To properly plead fraudulent conduct in violation of federal securities laws, a plaintiff must allege concrete facts which were known to defendants when they engaged in the allegedly offending conduct. *Zaltzman v. Clark*, [1991–92 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,603 at 92,841, 1991 WL 335982 (N.D.Cal. Mar. 17, 1992), *modified on reconsideration*, [Current Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,897, 1992 WL 207936 (June 5, 1992). Vague, canned or form allegations are no substitute for the particularity required by Fed.R.Civ.P. 9(b).

### e. The June 1992 Press Release

In June 1992, Syntex issued a press release stating that the company expected "increased sales" in the fourth quarter of fiscal 1992 (ending July 31) and that it expected a "very strong fiscal 1993." 2nd Comp. ¶ 78. According to the Second Amended Complaint, Defendants had information at the time this statement was made indicating problems with Naprosyn sales and weak demand for and slow sales of Oral Toradol. 2nd Comp. ¶¶ 81(a), (d).

The company's statement that it expected increased sales in the fourth quarter of fiscal 1992 is not actionable. The projection proved to be accurate when compared to sales figures for the same quarter in fiscal 1991. Cartun Decl., Ex. 6 at 16 (Syntex Corp. 1992 Annual Report). If compared to sales for the third quarter 1992, the projection was off by less than 2%. Companies are not liable for sales projections which later prove to be slightly inaccurate. *See In re Convergent Technologies Sec. Litig.*, 948 F.2d 507, 514 (9th Cir.1991). Were this not the rule, a company would face a lawsuit each time it released a forecast. If sales were less than predicted, those who purchased stock on the basis of the prediction would sue; if sales proved greater than predicted, sellers would sue. *Raab*, 4 F.3d at 290. By their very nature, forecasts are imprecise. However, the information they provide is important to the market. These considerations dictate that companies be given leeway when evaluating the accuracy of their forecasts. *See id.*

Nor are Defendants liable for the company's statement that it expected a very strong fiscal 1993. Although projections and general statements of optimism may trigger liability under federal securities laws, *Apple*, 886 F.2d at 1113, statements that are so vague or amorphous that no reasonable investor could rely on them are not actionable. *Raab*, 4 F.3d at 288, 289–290 (soft forecasts such as "[Defendant] is poised to carry the growth and success of 1991 well into the future," or market for defendant's services had "an expected annual growth rate of 10% to 30% over the next several years," or "results during the remainder of 1992 should be in line with analysts' current projections" are

not actionable); *Howard v. Haddad*, 962 F.2d 328, 331, n. 10 (4th Cir.1992) (projections that "the Bank was growing"; "the stock was a good investment" and "a good opportunity" amounted to non-actionable puffing); *Rogal v. Costello*, [1992–93 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,245 at 95,093, 95,094, 1992 WL 426467 (N.D.Cal. Oct. 8, 1992) (defendant's indications that they had a "more positive outlook for the June quarter" and "bullish" feelings about the remainder of the year too vague to be actionable); *Shore v. Costello*, No. C–91–20195 RMW, slip op. at 6–7 (N.D.Cal. May 15, 1992) (same result for statements that "we see several positive signs for revenue growth in the second quarter" and "confident that Cadence would become a $1 billion firm within five years"). The company's statement that it expected a "very strong fiscal 1993" is just such a statement.

### f. FDA Approval of Over-the-Counter Naprosyn

Plaintiffs also allege that Syntex made a material misrepresentation when it stated in October 1991 and January 1992 that it was successfully developing an over-the-counter version of Naprosyn which would be introduced before its patent on prescription Naprosyn expired. 2nd Comp. ¶¶ 3, 52, 69. According to Defendants, this statement is a non-actionable forecast and Plaintiffs' allegation concerning it is insufficient.

The Court agrees with Defendants. Although Plaintiffs support their allegations by citing specific facts Defendants had in their possession when Syntex issued its statements (dosage and absorption data), *See* 2nd Comp. ¶¶ 58(c), 70(d), 75(b), 81(b), the predictions were not sufficiently inaccurate to be actionable. A forecast that is reckless when made does not give rise to liability if it ultimately proves to be accurate. *In re HealthCare Compare Corp. Sec. Litig.*, [Current Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,104 at 98,815, 1993 WL 616683 (N.D.Ill. Nov. 19, 1993). After all, securities laws are designed to prevent the market from being misled. If the market has not been misled, there is no liability. Defendants do not dispute that the Naprosyn patent expiration

date was December 21, 1993, or that the FDA approved over-the-counter Naprosyn on January 11, 1994, just three weeks later. That the FDA approved over-the-counter Naprosyn when it did renders Defendants' predictions to be substantially accurate and not actionable.

### 3. Analysts' Statements

██ Plaintiffs' Second Amended Complaint also alleges that Defendants are liable for misleading projections contained in analysts' reports. *See, e.g.,* 2nd Comp. ¶¶ 40, 41. Defendants argue that Plaintiffs have failed to sufficiently allege that Defendants adopted these misstatements as their own.

██ A company may be liable for analysts' forecasts which it fostered and reviewed but failed to correct if it expressly or impliedly represented that the information was accurate or coincided with the company's views. *Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156, 163 (2d Cir.1980). Allegations based on this theory of liability must legally support a conclusion that the company adopted, endorsed or sufficiently entangled itself with the forecasts to render them attributable to him. *In re Caere Corporate Sec. Litig.,* 837 F.Supp. 1054, 1059 (N.D.Cal. 1993). Rule 9(b) requires a plaintiff who alleges a corporation's responsibility for analysts' statements to "(1) identify specific forecasts and name the insider who adopted them; (2) point to specific interactions between the insider and the analyst which gave rise to the entanglement; and (3) state the dates on which the acts which allegedly gave rise to the entanglement occurred." *Id.; see also In re Time Warner Inc. Sec. Litig.,* 9 F.3d 259, 264 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994).

Plaintiffs' Second Amended Complaint fails to satisfy these requirements for any of the misstatements that might otherwise be actionable. For example, Plaintiffs allege that on January 9, 1992, defendant Freiman spoke at the company's semi-annual meeting with analysts and that Merrill Lynch issued a report five days later stating that "the company essentially confirmed our key assumptions for sales and earnings growth." 2nd Comp. ¶ 69, 70. The Second Amended Complaint further alleges that the Merrill Lynch report also contained product-specific information which Freiman provided to analysts at the meeting. *Id.* In Plaintiffs' opinion, "[t]here can be no clearer example of defendants placing their "imprimatur" on an analyst's statements." Pltfs' Opp.Memo. at 13.

Plaintiffs are mistaken. The facts alleged in this portion of the Second Amended Complaint indicate a one-way flow of information, from Freiman to the analysts and from the analysts to their customers. There are no factual allegations that Freiman entangled himself with the report prior to or after its publication, for example, by endorsing or approving the spin its authors put on the information he had disclosed or by attesting to the accuracy of its forecasts or conclusions. Without such facts, there can be no liability. The same analysis applies to Plaintiffs' allegations concerning the January 6, 1992 report issued by The First Boston Corp., 2nd Comp. ¶ 43, the March 2, 1992 PaineWebber report, *Id.,* ¶ 44, and the July 1, 1992 Hambrecht & Quist report. *Id.,* ¶ 45.

In opposition to Defendants' motion, Plaintiffs also cite their allegations that analysts reported Syntex's June 1992 press release announcing that the company expected increased sales. 2nd Comp. ¶¶ 78, 81. However, this statement is not actionable. *See* section II.A.2.e.

### 4. Statute of Limitations

██ Plaintiffs' Second Amended Complaint extends the class period stated in the First Amended Complaint from May 26, 1992 to August 6, 1992. Defendants argue that except for claims concerning FDA approval of over-the-counter Naprosyn, the claims of the new class are barred by the statute of limitations.

Defendants are correct. Plaintiffs bringing claims under Rule 10b–5 must do so within one year of their discovery of the facts constituting the alleged fraudulent conduct, and in no event more than three years from the date the conduct occurred. 15 U.S.C. §§ 78i(e), 78r(c); *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 363, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991). In this case, Plaintiffs' new claims were filed on November 30, 1993.

Given that Plaintiffs' original complaint, filed on November 13, 1992, contains allegations concerning the extended period that are substantively identical to those in the Second Amended Complaint, Plaintiffs knew or should have known of the acts constituting the alleged fraud more than a year before the Second Amended Complaint was filed. Thus, the claims of the new class are barred.

■■■ Plaintiffs contend that under Rule 15(c) of the Federal Rules of Civil Procedure the claims of the new class relate back to the claims in the original complaint because they arise out of the same conduct, transactions and occurrences. However, an amendment adding a party plaintiff relates back to the date of the original pleading only if (1) the defendant received within the limitations period adequate notice of the claims of the newly proposed plaintiff; (2) the relation back does not unfairly prejudice the defendant; and (3) there is an identity of interests between the original and newly proposed plaintiff. *Rembold v. Pacific First Federal Savings Bank,* 1989 WL 35914 at *1 (D.Or. Apr. 11, 1989) (analogizing to requirements for adding party defendants); *see also Avila v. INS,* 731 F.2d 616, 620 (9th Cir. 1984). According to class counsel, Plaintiffs' First Amended Complaint gave Defendants adequate notice of the claims arising during the extended class period such that Defendants will not suffer prejudice. However, their opposition does not address whether the two groups of plaintiffs have an identity of interest and Defendants note that they have a potential conflict of interest given the timing and content of the company's disclosures. *See In re Seagate Technology II Sec. Litig.,* 843 F.Supp. 1341, 1364–1365 (N.D.Cal. 1994) (recognizing possible conflict of interest where there have been a series of partially curative disclosures). Because Plaintiffs have not satisfied their burden of showing that the two groups of plaintiffs have an identity of interest, the new claims are barred.

**5. Plaintiffs' Secondary Liability Claims**

Plaintiffs also allege that Defendants are liable for aiding and abetting and conspiracy. 2nd Comp. ¶¶ 34, 96. Defendants move to dismiss Plaintiffs' claims that are based on these theories.

■■■ There is no private right of action under § 10(b) for aiding and abetting. *Central Bank of Denver v. First Interstate Bank of Denver,* — U.S. —, —, 114 S.Ct. 1439, 1448, 128 L.Ed.2d 119 (1994). The Court reached this conclusion reasoning that the text of section 10(b) does not expressly impose aiding and abetting liability and none of the express private causes of action in the securities acts imposes such liability. *Id.* at —–—, 114 S.Ct. at 1448–1449. Citing statutes in other substantive areas that impose liability for aiding and abetting, the Court further noted that had Congress intended the securities laws to encompass aiding and abetting behavior, it knew how to do so.

The Court's rationale in *Central Bank of Denver* also forecloses Plaintiffs' conspiracy liability theory. Section 10(b) is silent as to conspiracy liability and there is no provision in the securities statutes authorizing a private cause of action for such conduct. Moreover, that other statutes contain express provisions imposing liability for conspiracy suggests that Congress did not intend § 10(b) to do the same. *See id.* at —, 114 S.Ct. at 1448; and *see e.g.,* Act of Mar. 4, 1909, § 37, 35 Stat. 1096, *as amended,* 18 U.S.C. § 371 (criminal conspiracy statute); Packers and Stockyards Act, 1921, ch. 64 § 202, 42 Stat. 161, *as amended,* 7 U.S.C. § 192(f), (g) (civil conspiracy provision).

**6. Plaintiffs' Claims under § 20(a)**

Plaintiffs' Second Amended Complaint also states a cause of action against Defendants under § 20(a). In the absence of cognizable claims under § 10(b), Plaintiffs' claims under § 20(a) fail.

**B. Plaintiffs' Motion to Strike**

In support of their motion to dismiss or, in the alternative, for partial summary judgment, Defendants filed declarations prepared by Joyce Albers, Kent Blair, Steven Scala and Richard R. Vietor in an attempt to establish that the market was aware of Oral Toradol prescription levels and the profit potential for over-the-counter Naprosyn. Plaintiffs moved to strike these declarations on

the ground that they contain information and documents neither attached to nor referenced in the Second Complaint and are not proper subjects of judicial notice. Since Defendants' motion to dismiss can be resolved without relying on these declarations, the arguments about them are moot.

### C. Defendants Melvin Booth and Thomas Hoffmeister's Motion to Dismiss

■ The Second Amended Complaint added defendants Melvin Booth, Vice President of Syntex International and Thomas Hoffmeister, Vice President of Syntex. 2nd Comp. ¶¶ 21(g), (h). Although Booth and Hoffmeister move to dismiss along with the other defendants on the grounds set forth in section II.A, they also move separately to dismiss on the basis that except for Plaintiffs' claims related to FDA approval of over-the-counter Naprosyn, the claims against them are barred by the statute of limitations.

■ The statute of limitations for claims brought under Rule 10b–5 is triggered "when the plaintiff has actual knowledge of the fraud or knowledge of facts sufficient to put a reasonable person on notice." *Davis v. Birr, Wilson & Co., Inc.*, 839 F.2d 1369, 1370 (9th Cir.1988); *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 721–722 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1837, 128 L.Ed.2d 465 (May 16, 1994); *Menowitz v. Brown*, 991 F.2d 36, 41 (2d Cir.1993). Plaintiffs' claims against Booth and Hoffmeister are based on their positions with the company and stock sales. 2nd Comp. ¶¶ 21(g), (h). Syntex's 1991 annual report, referenced in Plaintiffs' First Amended Complaint, indicates Booth and Hoffmeister's corporate titles. Cartun Decl., Ex. 1 at 36. Thus, Plaintiffs had notice of this information well over a year before they filed the Second Amended Complaint—a conclusion Plaintiffs do not dispute. Plaintiffs' insider trading allegations against Booth and Hoffmeister are based on information contained in SEC Form 4 reports filed on September 2, 1992. 2nd Comp. ¶ 21(i). Such reports are sufficient to put Plaintiffs on inquiry notice of their claims. *Menowitz*, 991 F.2d at 42. Since this information was available almost a year and three months before the Second Amended Complaint was filed, Plaintiffs'

claims against Booth and Hoffmeister are time-barred.

■ Plaintiffs attempt to avoid this problem by arguing that their allegations relate back to the original complaint under Fed.R.Civ.P. 15(c). However, the relation-back doctrine is inapplicable to a newly added defendant unless the defendant "should have known that, but for a mistake concerning identity, the action would have been brought against it." *Louisiana–Pacific Corp. v. ASARCO, Inc.*, 5 F.3d 431, 434 (9th Cir.1993). Thus, the relevant inquiry focuses on when the plaintiff first had notice of the defendant's correct identity, not on when the plaintiff first had notice of the defendant's culpability. *In re Rexplore, Inc. Sec. Litig.*, 685 F.Supp. 1132, 1145 (N.D.Cal.1988); *see also Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 857 (9th Cir.1986) ("Rule 15(c) was intended to protect a plaintiff who mistakenly names a party and then discovers, after the relevant statute of limitations has run, the identity of the proper party."), *cert. denied,* 480 U.S. 934, 107 S.Ct. 1575, 94 L.Ed.2d 766 (1987). Since Plaintiffs do not contend that they made a mistake concerning Booth and Hoffmeister's identity, they are not entitled to take advantage of Rule 15(c).

Therefore, Plaintiffs' claims against defendants Booth and Hoffmeister, except for those relating to FDA approval of over-the-counter Naprosyn, are barred by the statute of limitations.

### D. Defendant Marvyn Carton's Motion to Dismiss

Defendant Marvyn Carton, an outside director of Syntex, moves to dismiss Plaintiffs' claims against him. Carton joins in the other defendants' motion to dismiss. In addition, he argues that Plaintiffs' fraud allegations do not satisfy Rule 9(b) and Plaintiffs' secondary liability allegations against him are inadequate.

Since the Court granted the other defendants' motion to dismiss, Plaintiffs' claims against Carton must also be dismissed. However, even if Plaintiffs' claims against the other defendants survived their motion to dismiss, Plaintiffs' claims against Carton would be dismissed on independent grounds.

1100

### 1. The Primary Liability Allegations Against Carton

Rule 9(b) requires a plaintiff to attribute particular fraudulent acts or statements to a particular defendant. The Ninth Circuit relaxes this rule where alleged misstatements can be attributed to a group:

> In cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statement, annual reports, press releases, or other "group published information," it is reasonable to presume that these are the collective actions of the officers. Under such circumstances, a plaintiff fulfills the particularity requirements of Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the representations.

*Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir.1987). However, the group pleading doctrine is available only as to those officers and directors who are involved in the day-to-day activities, management, or control of the company. *Smith v. Network Equipment Technologies, Inc.*, [1990–91 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,659 at 98,093, 1990 WL 263846 (N.D.Cal. Oct. 19, 1990); *In re Sunrise Technologies Sec. Litig.*, [1992 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,042 at 94,584, 1992 WL 359636 (N.D.Cal. Sept. 22, 1992); *see also Wool*, 818 F.2d at 1440; *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir.1989). By definition, outside directors do not participate in the corporation's day-to-day affairs. Thus, the doctrine may be invoked as to outside directors only if they are "involved in the day-to-day management of those parts of the corporation involved in the [alleged] fraud," *Smith*, ¶ 95,659 at 98,093, or if they otherwise have a special relationship or status with the corporation. *Haltman v. Aura Systems, Inc.*, 844 F.Supp. 544, 548 (C.D.Cal.1993); *see also In re Marion Merrell Dow, Inc., Sec. Litig.*, 1993 WL 393810 at *5 (W.D.Mo. Oct. 4, 1993) (standard of specificity for pleading allegations against outside directors higher than that required for corporate insiders); *Klein v. King*, [1989–90 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 95,002 at 95,609 (N.D.Cal. Mar. 26, 1990).

Plaintiffs' allegations as to Carton's position are inadequate to warrant application of the group pleading presumption. Plaintiffs' Second Amended Complaint alleges that Carton has been a director of Syntex since 1957, that he chairs its finance and trust revenue committees, and that by virtue of these positions he had access to the company's internal business plans, budgets and forecasts, was privy to the contents of Syntex's quarterly and annual reports, press releases and presentations to securities analysts prior to their issuance, and had the ability to prevent their issuance or cause them to be corrected. 2nd Comp. ¶¶ 21(e), 25, 26. However, these facts are not sufficient to establish that Carton enjoyed a special relationship with Syntex or that he participated in its day-to-day affairs. They indicate nothing more than boardroom titles, not operational involvement. In addition, Plaintiffs have alleged no facts to establish that Carton participated in the preparation of the documents and communications containing the alleged misrepresentations. In light of the deficiencies, the primary liability allegations against Carton do not satisfy Rule 9(b).

For the reasons stated in section II.A.5, Plaintiffs' secondary liability claims against Carton must also be dismissed.

### CONCLUSION

The allegations in Plaintiffs' Second Amended Complaint do not give rise to liability under § 10(b), Rule 10b–5, or § 20(a). Because the defects in Plaintiffs' Second Amended Complaint cannot be cured by amendment, Plaintiffs' claims against all Defendants are DISMISSED WITH PREJUDICE.

Accordingly, the Clerk of the Court shall close this case and all related cases.

IT IS SO ORDERED.