**George PLATSIS; George Platsis, P.C., Plaintiffs–Appellants, Cross–Appellees,**

v.

**E.F. HUTTON & CO., INC.; *Joseph* Potvin, Defendants–Appellees, Cross–Appellants.**

Nos. 90–1636, 90–1678 and 90–1679.

United States Court of Appeals, Sixth Circuit.

Argued May 16, 1991.

Decided Oct. 2, 1991.

Rehearing and Rehearing En Banc Denied Nov. 12, 1991.

George Platsis, Okemos, Mich. (argued and briefed), pro se.

Patrick B. Griffin (argued and briefed), Jonathan D. Stick, Omaha, Neb., William K. Holmes, Warner, Norcross & Judd, Grand Rapids, Mich., Lindsey Miller–Lerman, Omaha, Neb., for defendants-appellees, cross-appellants.

Before JONES and RYAN, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

George Platsis, P.C., a legal professional corporation of which George Platsis was the sole employee and sole shareholder, received a contingency fee of $500,000 in 1980. Platsis consulted defendant Joseph Potvin of E.F. Hutton seeking investments which would allow him to maximize the after-tax return on the award. With Potvin's advice, Platsis invested $245,000 in oil and gas partnerships. These investments were made immediately before the worldwide drop in oil prices. Consequently, Platsis lost more than half of the funds invested. Platsis sued E.F. Hutton alleging multiple securities law violations. The trial court found against Platsis on all counts, and this court affirmed in a per curiam opinion. 829 F.2d 13 (6th Cir.1987).

In addition to the unsuccessful oil and gas investments, the Platsis corporation invested $351,400 in utility bonds. The bonds were recommended as a time-play device to reduce Platsis's income tax liability because the bonds had a low stated interest rate. Since interest rates were very high at the time the bonds were purchased, they were selling at a deep discount from their face value. E.F. Hutton predicted that market interest rates would fall, with the result that the purchase price of the utility bonds would increase while the taxable income from the bonds remained low. Additionally, the growth in value of the bonds would be taxed at capital gain rates as long as Platsis held the bonds longer than six months.

The utility bonds were transferred to Platsis as his salary on January 31, 1981, the last day of the corporation's tax year. In 1986, after the district court resolved the oil and gas suit in favor of defendant E.F. Hutton, Platsis and his corporation filed suit against both Hutton and Potvin asserting that the sale of the utility bonds violated state and federal securities laws and Michigan common law. Additionally, Platsis in his individual capacity sued Potvin in regard to the oil and gas investments.

The district court dismissed the oil and gas suit against Potvin on res judicata grounds and awarded Rule 11 sanctions against the plaintiff for bringing a duplicative lawsuit. The court also dismissed Platsis from the utility bond claims, holding that the corporation had standing to advance these claims but the individual did not. The remaining claims, the corporation's claims regarding the utility bonds, were tried before the district court. The court found for the plaintiff corporation and awarded it $38,000 in damages, plus pre- and post-judgment interest.

Platsis has appealed the dismissal of his oil and gas suit against Potvin and the award of Rule 11 sanctions. He also appeals the court's decision that he lacked standing to join the utility bond suit. Plat-

sis's corporation appeals the court's failure to award interest as damages and other exemplary damages. The defendants cross-appeal the $38,000 award. For the reasons that follow, we reverse the district court's finding in favor of the plaintiff on the utility bond claim, and we affirm the judgment of the district court in all other respects.

## I. FACTS

Of the $351,400 in utility bonds purchased by the corporation, less than $50,000 worth were bought on the New York Bond Exchange. The remaining bonds were purchased from E.F. Hutton's inventory. The bonds were bought during the last twelve days of 1980 with some of the settlement dates falling in January 1981. Platsis received purchase confirmation slips for each of the sixteen bond purchases. The slips for the Exchange bonds reflected commissions and showed that E.F. Hutton was acting as an agent. Those for the inventory bonds did not include commissions and showed that E.F. Hutton was acting as a principal/market maker. At some point before all of the bonds were settled, Platsis asked Potvin why some of the confirmation slips did not show commissions. Potvin explained that those purchases were from inventory and the brokerage did not charge commissions on inventory transactions. This statement was true. However, the trial court found that it was designed to, and did, deceive Platsis into believing that E.F. Hutton did not profit from inventory transactions. The court found that both Hutton and Potvin profited from the inventory sales, and found that the failure to explain this to Platsis, especially in light of his question regarding commissions, was a material omission in the face of a duty to disclose, and consequently violated Rule 10b–5.

## II. DISCUSSION

### A. *Non-disclosure of Profits*

In order to establish a violation of Rule 10b–5, the plaintiff must show:

(1) a misrepresentation or other fraudulent device; (2) a purchase or sale of securities in connection with the fraudulent device; (3) scienter by defendant in making the misrepresentation or omission; (4) materiality of the misrepresentation or omission; (5) justifiable reliance on the fraudulent device by plaintiff (or due diligence against it); and (6) damages resulting from the fraudulent device.

*Shivangi v. Dean Witter Reynolds, Inc.,* 825 F.2d 885, 888 n. 6 (5th Cir.1987).

The trial court held that Potvin's failure to disclose the amount of the production credits and markups earned on inventory sales was a deliberate, material omission in the face of a duty to disclose. We find that the trial court's finding that the omission was deliberate was clearly erroneous, and we therefore reverse.

Scienter is a necessary element of a 10b–5 claim. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 1380–81, 47 L.Ed.2d 668 (1976). To establish this element, the plaintiff must show that the defendant acted:

with 'actual intent to deceive, manipulate, or defraud' or severe recklessness, which is 'limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.'

*Shivangi,* 825 F.2d at 889 (quoting *Ernst & Ernst, supra,* and *Broad v. Rockwell Int'l Corp.,* 642 F.2d 929, 961–62 (5th Cir.) (en banc), *cert. denied,* 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981)).

[2] The district court made a number of factual findings with regard to the transaction at issue. First, the court found that very few brokers disclosed production credits, spreads or markups in 1980. Additionally, the court found that the markups and credits were reasonable. The court found that Potvin did not know the amount of the spreads which Hutton charged for the

bonds that plaintiff purchased, although he was familiar with Hutton's usual spreads. Moreover, the court found that the plaintiff presented himself as a sophisticated investor. Platsis' background suggests that he is more sophisticated than the average investor: he graduated from University of Michigan law school, worked for the Federal Trade Commission for two years and later worked for the consumer fraud division of the Michigan Attorney General's Office. Moreover, the trial court found that Platsis conveyed the impression that he was more sophisticated in investment matters than he actually was. In fact, Platsis held himself out to E.F. Hutton as an investment advisor handling the investment decisions for one of his clients. The court further found, based on Platsis' own testimony, that when Platsis made the decision to invest in utility bonds he expected the defendants to make a profit on the transactions.

From these facts, we conclude that the district court clearly erred in finding that defendants acted with scienter. Since very few brokers disclosed these credits at the time these events took place and there was no established regulatory duty to disclose these items, an intent to deceive or an "extreme departure from the standards of ordinary care" could not be established merely by the omission of this information in the absence of special circumstances. We find that there were no special circumstances in this case that converted an innocent silence into one of deceit.

■ The district court found scienter because when Platsis asked why some of the transactions did not reflect commissions, Potvin responded that commissions were not charged on inventory sales without further explaining what compensation was earned through those transactions. We cannot agree that this question provoked a duty to disclose the defendants' compensation system. Potvin first met with Platsis in October of 1980 and met with him several times over the subsequent two months to develop an investment strategy. During this time, Platsis presented himself as a sophisticated investor. Furthermore, Plat-

sis had approved the investment strategy, apparently with no inquiries regarding the source of the bonds or the defendants' compensation, leaving only the actual purchases of the securities to be completed. Under these circumstances, we find that Potvin's failure to respond to Platsis' question with an in-depth discussion of the compensation system for inventory transactions was not deceptive.

Accordingly, we reverse the district court's finding of a 10b–5 violation. Because a claim for actual fraud under Michigan law also requires a finding of scienter, *In re Estate of Swantek,* 172 Mich.App. 509, 432 N.W.2d 307, 310, *appeal denied,* 432 Mich. 874 (1989), we reverse that finding as well.

Additionally, we find that the district court erred as a matter of law in concluding that plaintiff had established a claim of innocent misrepresentation. Michigan's law of innocent misrepresentation is stated as follows:

> where an action is brought to recover for false and fraudulent misrepresentations made by one party to another [1] in a transaction between them, [2] any representations which are false in fact [3] and actually deceive the other, and [4] are relied on by him to his damage are actionable, irrespective of whether the person making them acted in good faith in making them, [5] where the loss of the party deceived inures to the benefit of the other.

*U.S. Fidelity & Guaranty v. Black,* 412 Mich. 99, 116, 313 N.W.2d 77 (1981).

■ Although an innocent misrepresentation claim does not require scienter, it does require a representation which is false in fact. This element can be satisfied only by an affirmative misstatement, not by an omission. *Dix v. American Bankers Life Assur. Co. of Fla.,* 141 Mich.App. 650, 367 N.W.2d 896, 900 (1985), *aff'd in part, reversed in part on other grounds,* 429 Mich. 410, 415 N.W.2d 206 (1987). *See also General Electric Corp. v. Wolverine Ins. Co.,* 420 Mich. 176, 362 N.W.2d 595, 600 (1984) (misrepresentation is "an assertion which is not in accord with the facts").

Since nothing in the record suggests that Potvin was guilty of any affirmative misstatement, the district court's conclusion that the defendants were liable for innocent misrepresentation under Michigan law was erroneous and must be reversed.

Finally, because we find that the defendants' conduct did not violate Rule 10b–5, we need not address Platsis' claim that he had standing as an individual to pursue this suit or the corporation's claim that the court should have awarded additional interest and exemplary damages.

### B. Suitability Claim

■ Plaintiff's expert, Mr. Stasen, testified at trial that utility bonds were an inappropriate investment for plaintiff's stated objective. Instead, he concluded that the only appropriate investment would have been municipal bonds. Therefore, the plaintiff contends that the trial court should have awarded plaintiff the difference between the cost of municipal bonds and what he paid for the utility bonds. The trial court determined that these allegations were not pleaded and therefore could not be argued at trial.

Unsuitability claims "are essentially fraud claims and must be pleaded with particularity." *Craighead v. E.F. Hutton,* 899 F.2d 485, 493 (6th Cir.1990). Our review of the record shows that neither the initial complaint nor either of the amended complaints contained any allegation that the utility bonds were unsuitable for the corporation's investment purposes. Accordingly, we conclude that the district court did not err in refusing to consider these allegations.

### C. Res Judicata

■ Platsis asserts that this court should reverse the district court's dismissal of his oil and gas claims on res judicata grounds. First, Platsis asserts that he was prejudiced by defendant Potvin's failure to follow the proper procedures for asserting res judicata. Plaintiff asserts that res judicata is an affirmative defense, and that it must be raised in the answer, not in a motion to dismiss. Additionally, plaintiff contends that in order to prevail on a res judicata theory, the defendant must attach affidavits regarding the former proceedings because this defense always raises new matters that are outside the pleadings. Therefore, the plaintiff argues that the defendant did not meet his burden of production with regard to this defense. Plaintiff asserts that he was prejudiced by the defendant's omissions because without specific allegations, citations to the previous record, and affidavits, he could not properly defend against the motion to dismiss.

This argument has no merit. Platsis was both party to and counsel in the previous suit and as such he was intimately familiar with the factual and legal bases of defendant's motion. Therefore, he cannot claim that he was prejudiced by the form of the pleadings. *See Wright v. Holbrook,* 794 F.2d 1152 (6th Cir.1986).

■ We also affirm the district court's conclusion on the merits of the res judicata issue. The court engaged in a lengthy analysis of the basis for dismissing the suit. First, the court noted that Potvin was initially included in the earlier suit against defendant Hutton but was later voluntarily dismissed from the suit by the plaintiff. Additionally, the court reviewed the new complaint against Potvin and found that each of the allegations that Potvin had violated Rule 10b–5 had been made in the suit against Hutton and those claims were resolved by a finding that 10b–5 had not been violated. The court determined that in certain circumstances mutuality is no longer required for claim preclusion and held that this was such a circumstance because (1) the stranger to the first action is so closely related to one of the parties that a subsequent claim will merely repeat the prior claim; (2) there was no reason why the plaintiff could not have asserted these claims in the prior proceeding; and (3) the precluded plaintiff had a full and fair opportunity to litigate the issues involved during the prior proceeding.

Plaintiff now asserts on appeal that his complaint against Potvin was "intended to assert" a suitability claim and a churning claim. He acknowledges that he did not

allege these actions in his complaint, but asserts that the district court denied him an opportunity to amend his complaint before the court granted the motion to dismiss. However, plaintiff is not appealing the court's denial of plaintiff's motion to amend. In fact, the district court's docket sheet does not indicate that plaintiff ever moved to amend his complaint after the defendant moved for dismissal, although two months passed between the defendant's motion for dismissal and the order granting that motion. Consequently, we affirm the dismissal of plaintiff's claim against Potvin on res judicata grounds.

## III. CONCLUSION

For the reasons stated above, we reverse the judgment of the district court finding a violation of Rule 10b–5, common law fraud, and innocent misrepresentation, and we affirm the district court's dismissal of all other claims.