## In re F & M DISTRIBUTORS, INC. SECURITIES LITIGATION.

### No. 95–CV–71778–DT.

United States District Court,
E.D. Michigan,
Southern Division.

March 27, 1996.

---

Leonard B. Shulman, Keywell & Rosenfeld, Troy, MI, E. Michael Bradley, Mark S. Mandel, William C. Rand, Jones, Day, Reavis & Poque, New York City, David Schiavone, Christopher Q. King, Sonnenschein Nath & Rosenthal, Chicago, IL, Jerold S. Solvy, J. Kevin McCall, Jacob I. Corre, Jenner & Block, Chicago, IL, Dennis K. Egan, Butzel Long, Detroit, MI, for defendants.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

This is a lawsuit by Margaret Acree, who contends that she and other persons who have similar claims, sustained damages as the result of their purchase of securities from F & M Distributors, Inc. (F & M) in direct violation of existing federal laws.[1]

On November 22, 1995, the Defendants filed a motion to dismiss, in which they generally contend that Acree had failed to set forth any claims upon which relief could be granted. Opposition papers were filed on January 17, 1996. A hearing was conducted on February 21, 1996, after which the matter was taken under advisement.

## I

Elwood Simon, John Zuccarni, Elwood S. Simon & Associates, P.C., Birmingham, MI, Bruce E. Gerstein, Barry Taus, Noah J. Silverman, Garwin, Bronzaft, Gerstein & Fisher, L.L.P., New York City, Irving M. Stahl, Irwin M. Stahl, P.C., Southfield, MI, E. Powell Miller, Mantese, Miller & Mantese, P.L.L.C., Troy, MI, Robert I. Harwood, Wechsler Harwood Halebian & Feffer, LLP, New York City, Richard M. Goodman, Goodman, Lister & Peters, Detroit, MI, Lionel Z. Glancy, Santa Monica, CA, for Plaintiffs.

During all of the times that are relevant to this controversy, F & M owned and operated a chain of stores throughout the eastern and midwestern parts of the United States, all of which focused on the sale of a wide selection of health and beauty aids, cosmetics, fragrances and household supplies at discount prices. F & M's commercial success was due in large part to its ability to engage in "deal" and "contract" buying with manufacturers which, in turn, allowed it to offer sales prices that were consistently lower than those of its

1. This case is a consolidation of two currently pending federal court cases in the Eastern District of Michigan; to wit, *Acree v. Agley, et. al.,* No. 95–CV–71778, and *Dismondi v. Agley, et. al.,* No. 95–CV–72150–DT. The *Acree* complaint has been identified by the Plaintiffs as their operative pleading in this litigation. The Plaintiffs have placed the Defendants into three distinct categories: (1) Inside Directors (Randolph J. Agley, Wayne C. Inman, Frank M. Jerneycic, Laura C. Kendall, Michael T. Timmis, and Earl T. Weissert), (2) Outside Directors (Eugene Driker, Archie A. Vanelslander, and B. Joseph White), and (3) Underwriters (Merrill Lynch, Pierce, Fenner & Smith, Inc., and Paine Webber, Inc.). These categories will be utilized by this Court during its analysis of the issues in controversy.

competitors.[2] In August 1993, F & M issued $75 million in 11.5% Senior Subordinated Notes (Notes) in an offering to the public pursuant to a Registration Statement and Prospectus that had been filed with and declared effective by the Securities and Exchange Commission.[3] On December 5, 1994, F & M filed a Chapter 11 voluntary petition for reorganization.

On April 28, 1995, Margaret Acree filed a six count complaint in her own name and on behalf of all other persons who had purchased F & M Notes between August 9, 1993 and December 6, 1994, in which she charged the Defendants with various violations of the Securities Act of 1933, the Securities Act of 1934, and the common law.

In Count I of her Complaint, Acree alleged that the Defendants had breached their duty to investigate and verify the accuracy of the statements within F & M's Registration Statement and Prospectus, in violation of Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k.

The charges in Count II were directed against the Underwriter Defendants and the individual Defendants, Agley, and Timmis, whom Acree accused of having (1) drafted, revised, approved and finalized a misleading Registration Statement and Prospectus, and (2) solicited the sale of the Notes.

Count III was brought against the Inside Director Defendants for their alleged violation of Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o. This Count contains an allegation that these Defendants, by virtue of their controlling stock positions, senior management positions, and/or director positions, possessed and exercised the power to influence F & M to engage in purposeful misrepresentations and omissions of material facts in its offering materials.

Count IV alleges violations of Section 10(b) and 10(b)–5 of the Securities Act of 1934, 15 U.S.C. § 78j(b), by all of the Defendants, whom Acree contends knowingly or recklessly employed fraudulent devices and schemes in connection with her purchase of the F & M Notes.

Count V addressed the conduct of the Inside Director Defendants who, according to Acree, utilized the power of their stock options to influence F & M to make material misrepresentations in its offering materials.

In Count VI, Acree asserted a common law claim against all of the Defendants, contending that they had negligently misrepresented the material facts in the offering materials.

## II

In support of their motion, the Defendants submit that the following factors mandate a dismissal of all of the pending claims against them; to wit, (1) the Complaint alleges a failure to disclose "industry" trends even though there are no federal securities laws which require this form of disclosure; (2) Acree has made allegations which charge them with failing to predict F & M's subsequent business difficulties in the absence of any federal securities laws or regulations that support this claim; (3) the Complaint does not contain any material facts which would warrant the inference that an industry trend existed; (4) the "bespeaks caution" doctrine bars Acree's federal claims as a matter of law because the Prospectus fully disclosed the pertinent risks about which they complain; and (5) the state law negligent misrepresentation claim is without any legal basis because (a) no misrepresentation or omission has been alleged, and (b) there is no independent basis for subject-matter jurisdiction without the federal securities counts.

The Defendants attack Count II, maintaining that liability under Section 12 of the

---

**2.** According to F & M's Prospectus, "deal" buying encompasses purchasing products at those times of the year when the manufacturer is able to offer substantial discounts in exchange for large volume purchases. On the other hand, "contract" buying provides for consistently low prices that are negotiated on the basis of purchase volume and other considerations. (Prospectus at 21).

**3.** All of the individuals who have been named as defendants were F & M directors and/or officers during all of the relevant periods in this controversy. However, two of these defendants, Archie A. Vanelslander and B. Joseph White, are no longer affiliated with F & M in any capacity.

Securities Act of 1933 can only attach to those persons who are the sellers of the challenged securities. It is their position that Acree has failed to plead (1) the requisite passing of title or (2) the solicitation of an offer to purchase that would transpose the Defendants into "sellers" for the purposes of Section 12. Finally, they submit that Counts III and V should be dismissed because their validity is dependent upon the validity of Counts I, II, and IV, which, according to the Defendants, fail to state a cognizable cause of action.[4]

In their opposition papers, Acree points to the following purposeful omissions from F & M's offering material which, in their opinion, support the allegations within the Complaint:

(a) F & M's preferential, bulk purchases had been vanishing for approximately one year prior to bond offering;

(b) the sharp reduction in deals had already caused F & M to lose much, if not all, of its purchasing and pricing advantage over local competitors;

(c) F & M's loss of its pricing advantage would likely, if not inevitably, lead to lesser revenues, profit margins and earnings;

(d) the combination of lesser revenues and increased purchasing costs would continue to significantly strain F & M's cash flow and liquidity;

(e) F & M's loss of its pricing and purchasing advantages, and the resulting decline in profits and increase in costs, would constrain and negatively impact upon its ability to successfully complete the expansion plans which were "central to the Company's growth and business strategy"; and

(f) the decline in F & M's profits and increase in its costs, and the resulting strain on its liquidity, jeopardized the Company's prospective ability to satisfy material covenants of its bank credit agreements.

Acree argues that, contrary to the Defendants' contentions, these omissions constitut-

ed an intentional concealment of existing facts which had adversely affected F & M's business. According to Acree, the Defendants falsely implied that F & M continued to possess its competitive advantage at the time of the offering, as indicated by the following statements in the Prospectus:

> The Company competes by offering its customers the widest selection in its product categories at every day low prices, which the Company believes generally offer savings to customers of up to 15% over discount stores and mass merchants, 15–25% over supermarkets and food stores and 20–40% over traditional drug stores.

> \*   \*   \*   \*   \*   \*

> The Company's competitive every day low pricing is based upon: (i) its ability to purchase most of its merchandise on a "deal" or "contract" pricing basis directly from consumer products manufacturers . . .

> \*   \*   \*   \*   \*   \*

> The Company believes that it competes effectively in its market areas by generally offering customers convenient store locations and a wider selections in its product categories at everyday low prices that are generally significantly below the price offered by supermarkets and food stores, and traditional drug stores, discount stores and mass merchants.

> \*   \*   \*   \*   \*   \*

> F & M stores compete with supermarkets and food stores, traditional drug stores, discount stores and mass merchants by offering lower prices and a greater selection . . . F & M also offers discounted pricing, which the Company believes generally is up to 15% below discount stores and mass merchants. . . .

Acree also submits that the Prospectus inaccurately represented that F & M's future growth prospects were bright, as reflected in the following statement:

---

**4.** Counts III and V allege "controlling person" liability. In order to establish such liability under Section 15 of the 1933 Act or Section 20(a) of the 1934 Act, the Plaintiff must establish that the Defendants controlled another person who committed a securities law violation.

The Company believes its growth will be favorably impacted by the following strategies:

Capitalize on Favorable Retailing and Demographic Trends. The Company believes that deep discount retailers will continue to increase their market share at the expense of more traditional, full-price retailers, as customers become more value conscious and familiar with deep discount retailers in many product categories.

(Prospectus at 19). Finally, Acree asserts that the Defendants continued to misrepresent and conceal material facts regarding F & M's business, profitability and cash flow in its press releases, quarterly reports and annual reports to shareholders, all of which generally stated that the Company's purchasing power had improved because of its continued focus on "deal" buying.

For the reasons that have been stated below, the Defendants' motion to dismiss will be granted in part and denied in part.

## III

### A. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b) permits a party to raise several defenses to a complaint, including the failure to state a claim upon which relief can be granted. In order for a complaint to be dismissed on this ground, a court must conclude "beyond [a] doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Carver v. Bunch,* 946 F.2d 451, 452 (6th Cir.1991) (quoting *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam)). In making its decision, a court must liberally construe the pleadings in favor of the non-moving party and accept all well-pleaded allegations as true. *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 392 (6th Cir.1975). This Rule also provides that

[i]f, on a motion asserting the defense ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as

provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b). On the basis of these basic rules, the Court will now discuss each of the Defendants' contentions in turn.

### B. Defendants' Duty to Disclose

▉ In order to establish a prima facie case under § 10(b) of the 1934 Act, the plaintiff must successfully prove the following essential elements: (1) a misrepresentation or omission by the defendant; (2) the misrepresentation or omission was material; (3) the purchase or sale of a security in connection with the fraudulent device; (4) scienter on the part of the defendant; (5) justifiable reliance by the plaintiff on the defendants' statements, or fraud on the market; and (6) damages that had a causal relationship to the misrepresentation or omission. *Cione v. Gorr,* 843 F.Supp. 1199 (N.D.Ohio 1994) (*citing, Platsis v. E.F. Hutton & Co.,* 946 F.2d 38, 40 (6th Cir.1991), *cert. denied,* 503 U.S. 984, 112 S.Ct. 1669, 118 L.Ed.2d 389 (1992)).

In support of their motion, the Defendants submit that the information, which Acree contends was purposefully omitted from F & M's public offering, is immaterial to this controversy because they had no duty to disclose "industry trends" or to predict "adverse consequences" of the trend. In her opposition papers, Acree argues that the omissions, to which her Complaint makes reference, rendered all of the other statements in the Prospectus misleading.

It is clear from a reading of the Complaint that Acree specifically (1) alludes to the Defendants' failure (a) to disclose a trend from "deal" buying in F & M's industry, and (b) the Company had decreased its "deal" buying at the time of the Note Offering, and (2) this omission rendered the publicly disseminated information relating to F & M's current status as well as the predictive statements about its future misleading. Thus, this Court must attempt to determine (1) whether the Defendants had a duty to disclose a trend from "deal" buying (or that their own deal buying opportunities had evaporated) and (2) if there are enough facts

to support Acree's contention that the omission rendered the other statements in the Prospectus misleading.

### 1. Industry Trends

■ The Defendants mischaracterize the industry "trend" that Acree contends was fraudulently concealed from her. They correctly note that the laws which regulate federal securities only deem firm specific information to be material and worthy of disclosure. *Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509 (7th Cir.1989). The non-disclosure of enacted or pending legislation and industry-wide trends is not a legitimate basis for a securities fraud claim. *Whirlpool Financial Corp. v. GN Holdings, Inc.*, 67 F.3d 605 (7th Cir.1995). For instance, in *Whirlpool*, the plaintiffs argued that the Company had made the following misrepresentation:

> The Revised Projections were unreasonable when made because they were based on GN's historical performance while defendants knew, but did not disclose, that the industry was subject to material adverse trends including proposed and enacted state and federal legislative and regulatory actions which would limit GN's revenue, increased competition to recruit nurses, trends toward reduced usage of temporary nurses, trends toward increased compensation and benefits for traveling nurses, shifts from inpatient to ambulatory care and trends toward hospital closings and a decrease in licensed beds.

67 F.3d at 608. The court concluded that this allegation could not form the sole basis for the plaintiff's Rule 10(b)–5 claim because the information that the defendant allegedly failed to disclose was "widely available public information and, therefore, by definition is available to any and all who take the time to discover it." *Id.*

Similarly, the court in *Wielgos* found no duty upon the defendant to (1) disclose the pendency of a regulatory application upon which to operate a nuclear reactor or (2) publicize the resulting delays during the approval process because the information was widely known and had been incorporated into the Company's registration statement. *Wielgos*, 892 F.2d at 517.

■ In the present case, Acree asserts that the Defendants had failed to disclose that F & M's ability engage in "deal" buying had begun to evaporate as of the Note Offering. This allegation is directed to the Defendants' failure to disclose that F & M had begun to lose its "deal" buying opportunities at the time of the Note offering, as opposed to a trend in the market as a whole. However, to the extent that Acree alleges a trend from "deal" buying, there is no indication that F & M's decreased ability to acquire merchandise in this manner was widely available public information, accessible to the investing public at large, or that the issue of bulk or "deal" buying had been the subject of recent legislation or other significant attention. In sum, there is nothing in the record to suggest that Acree, as a member of the investing public, should have known or could have known of a trend within F & M's industry from "deal" buying.

Even if the market knew of the trend from "deal" buying, an omission of the information about which Acree complains may prove to be material to this controversy because the representations by the Defendants (to wit, F & M was still successfully engaged in this mercantile practice) may be "viewed by a reasonable investor as having significantly altered the 'total mix' of information made available." *Ballan v. Upjohn Co.*, 814 F.Supp. 1375, 1382 (W.D.Mich.1992) *quoting, TSC Industries Inc. v. Northway Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). Once the Defendants made statements regarding the success of the "deal" buying strategy, they were obligated to "speak truthfully and to make such additional disclosures as are necessary to avoid rendering the statements misleading." *Ballan*, 814 F.Supp. at 1383 (*quoting, In re Par Pharmaceutical, Inc., Sec. Litig.*, 733 F.Supp. 668, 675 (S.D.N.Y.1990)). In *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1116, the Ninth Circuit Court of Appeals noted that "[t]he investing public justifiably places heavy reliance on the statements and opinions of corporate insiders." At this stage of the litigation, the Court cannot con-

clude as a matter of law that the trend from "deal" buying was sufficiently publicized in the marketplace to such an extent that Acree should have been aware of it when she purchased her Notes.

While the rule which proscribes that publicized industry trends need not be disclosed serves the interest of the investing public as well as issuers of notes, it makes sense only when this information is truly available to the public. However, if there is a trend that is not well known which, nevertheless, directly affects the livelihood of the issuer's business, it is material and should be disclosed to potential investors. If "deal" buying, which allegedly played a large role in F & M's success, had begun to evaporate at the time of the offering, a reasonable investor could find this information to be highly relevant when deciding whether to invest in the Company. It remains to be determined if there was such a trend in this case and whether the materiality was of the magnitude alleged in the Complaint. However, at this stage, it cannot be said that Acree "can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Carver*, 946 F.2d at 452.

### 2. Future Business Prospects

■ The Defendants also contend that Acree improperly alleges that they should be held liable for failing to make forward looking statements concerning F & M's financial performance. Once again, the Defendants mischaracterize the nature of her claim. In her Complaint, Acree alleges that the Defendants had failed to disclose the future impact of presently known trends. While the Defendants correctly note that there is no obligation to disclose forward looking information under those federal regulations which govern securities, these laws do require the disclosure of presently known data that will have an impact upon future operating results, such as known future increases in costs of labor or materials. *See*, Securities and Exchange Commission (SEC) Regulation S–K 303, 17 C.F.R. §§ 229.303(a)(1), 229.303(a)(2) and 229.303(a)(3)(ii). This is precisely the type of information that the Defendants allegedly failed to disclose.

While the Court recognizes that there is no private cause of action under S–K 303, the issue is probative as to whether the omitted information was material. As such, this Court cannot conclude that Acree's allegations fail to state a claim against the Defendants as a matter of law.

### 3. Misleading Statements

The Defendants contend that Acree has failed to (1) present any factual allegations which would support her conclusion pertaining to an industry trend, and (2) identify any statement that could have been rendered materially misleading by her failure to disclose the industry trend.

The Defendants' first claim is meritless because, as Acree notes, her allegation relating to the trend in the industry must be taken as true, and, thus, it requires no inference. *Ballan v. Upjohn Co.*, 814 F.Supp. 1375, 1378 (W.D.Mich.1992). She has alleged a fact (i.e., "deal" buying opportunities had begun to evaporate-at the time of the Note offering) that leads to the possible inference F & M's financial condition was not as bright as it was reported. This allegation is sufficient to survive the Defendants' motion to dismiss.

■ The Defendants also claim that Acree has not identified any affirmative statements that were misleading through their omission. This claim must be rejected, as well. In support of their position, the Defendants correctly note that some courts have ruled that a complaint must identify "an affirmative statement that is made misleading by the material omission." *In re Union Carbide Class Action Securities Litigation*, 648 F.Supp. 1322, 1326 (S.D.N.Y.1986).

Contrary to the Defendants' arguments, Acree has fulfilled this requirement by citing statements in the Prospectus that, in her judgment, were rendered misleading by their omission. First of all, she maintains that the Defendants' statements regarding F & M's present and future success in the market place was rendered misleading, for example:

42. The Defendants attributed F & M's ability to offer "every day low pricing" in large part to its ability to purchase mer-

chandise from product manufacturers at low prices. According to the Prospectus:

> The Company's competitive every day low pricing is based upon (i) its ability to purchase most of its merchandise on a "deal" or "contract" pricing basis directly from consumer products manufacturers ...
>
> As a result of these and other operating efficiencies, the Company believes that it is the lowest-cost operator of stores among its principal deep discount competitors.

45. Defendants also represented in the Prospectus that the Company had the ability, intent and desire, to continue its store expansion.... As stated in the on page 4 of the Prospectus:

> In the next 12 months, the Company intends to open approximately 10 F & M superstores in existing or contiguous markets in order to achieve further market penetration and dominance....

She claims that the Defendants, in their use of the present tense in describing F & M's business and purported pricing and purchasing advantages, improperly implied that F & M continued to possess its competitive advantage at the time of the Note offering.

In addition, Acree submits that the Defendants continued to misrepresent and conceal material facts in their press releases, quarterly reports and annual reports to F & M's shareholders:

> 89. Moreover, the Third Quarter 1994 Form 10–Q contained the following statements:
>
> (a) That F & M's profit margins had increased as a percentage of sales in the third quarter because of *"improvement in the Company's purchasing power* and a favorable sales mix...."*;
>
> (b) That *"The Company continued to focus on reducing its net cost of merchandise by taking advantage of deal buying in the marketplace* and changing merchandise sales mix to higher margin categories"; and
>
> (c) That in the nine months ended October 30, 1993, there was *"an increase*

*in inventories related to deal buying opportunities* and preparation for the Christmas season...."

(Complaint ¶ 89) (emphasis in original). Reading the Complaint in a light that is most favorable to Acree, the Defendants have not demonstrated that she will be unable to submit a sufficiency of facts which will support her claim on this issue. Her Complaint has been written with enough specificity to state a claim against the Defendants.

### C. Bespeaks Caution Doctrine

The Defendants claim that the Prospectus and the subsequent public statements by F & M specifically apprised investors of the very risks to which Acree assigns her loss. To support this claim, they cite the following cautionary language in the Prospectus:

> There can be no assurance that the Company's operating results will be sufficient for payment of the Company's indebtedness. (p. 6)
>
> Several of the Company's markets ... have been subject to increasing competition by discount mass merchants ... Many of the Company's competitors have more stores and greater financial resources than the Company. (p. 7)
>
> During the first quarter ended May 1, 1993, the Company experienced a 4% decline in comparable store sales and has not seen a substantial change in comparable store sales in the first two months of the second quarter ending July 31, 1993 ... Second quarter sales have been affected by a difference in the advertising program implementation ... and heightened competitive conditions in certain markets. (p. 12)
>
> Comparable store sales declined 0.5% in fiscal 1993 due to new store openings by competitors in several of the Company's markets which disrupted the sales patterns of 34 stores or 29% of the chain. (p. 13)
>
> No assurance can be given that [the Company's] expansion plans will be accomplished. (p. 19)

It is the Defendants' contention that the above cited language apprised the investors of the potential risks of their investments

because the "bespeaks caution doctrine" is limited to economic projections.

■ Economic projections are not actionable if they "bespeak caution." *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1040 (6th Cir.1991). However, in *Ballan v. Upjohn*, 814 F.Supp. 1375 (W.D.Mich.1992), *citing Polin v. Conductron Corp.*, 552 F.2d 797, 806 n. 28 (8th Cir.), *cert. denied*, 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 129 (1977), the court concluded that, although "[e]conomic projections are not actionable if they bespeak caution," the defendant's reliance on *Sinay* had been misplaced because the issues in controversy did not involve a claim for false economic projections. *Ballan*, 814 F.Supp. at 1382. In distinguishing *Sinay* and denying the defendant's motion to dismiss under 12(b)(6), the *Ballan* court noted that "[r]ather than faulting defendants for making *forward-looking* statements, [the] plaintiff's complaint [alleged] a failure to disclose material information." *Id.* (emphasis added). Likewise, in the instant case, Acree has alleged that the Defendants had failed in their duty to disclose an *existing* material fact.

Even in *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir.1995), which has been cited by the Defendants in this case, the Ninth Circuit Court of Appeals implicitly limited the application of this doctrine to forward-looking statements. (" 'bespeaks caution' doctrine provides a mechanism by which a court can rule as a matter of law ... that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud").

In *Rubinstein v. Collins*, 20 F.3d 160, 167 (5th Cir.1994), a case that had been cited by the Plaintiff in *Fecht*, the Fifth Circuit Court of Appeals underlined the limitation of the "bespeaks caution" doctrine:

> The 'bespeaks caution' doctrine applied by the district court reflects a relatively recent, ongoing, and somewhat uncertain

evolution in securities law, an evolution driven by the increase in and the unique nature of fraud actions based on *predictive* statements. In essence, predictive statements are just what the name implies: predictions. As such, any optimistic projections contained in such statements are necessarily contingent. Thus, the 'bespeaks caution' doctrine has developed to address situations in which optimistic *projections* are coupled with cautionary language. (emphases added).

Acree's assertion which challenges the Defendants' failure to disclose the decrease in "deal" buying opportunities cannot be considered as being tantamount to an allegation of false predictions or projections. Therefore, the Defendants' reliance upon the "bespeaks caution doctrine" in the instant action is unwarranted.

### D. Scienter Pleading Requirement

■ An essential element of a claim under Rule 10(b)–5 is scienter. *Cione v. Gorr*, 843 F.Supp. 1199, 1201–02 (N.D.Ohio 1994) *citing Platsis v. E.F. Hutton & Co.*, 946 F.2d 38, 40 (6th Cir.1991), *cert. denied*, 503 U.S. 984, 112 S.Ct. 1669, 118 L.Ed.2d 389 (1992). With regard to Acree's claim under § 10(b) of the 1934 Act, the Defendants assert that she did not plead scienter with the requisite sufficiency.[5] This Court does not agree.

According to *Ballan*, the Sixth Circuit Court of Appeals has interpreted scienter to include recklessness. 814 F.Supp. at 1388 *citing Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 739 F.2d 1434, 1435 (9th Cir. 1984). "Recklessness is defined as 'highly unreasonable conduct which is an extreme departure from standards of ordinary care.' " *Id.* quoting *SEC v. Blavin*, 760 F.2d 706 (6th Cir.1985).

■ Here, the Plaintiff has alleged a sufficiency of facts to support an inference that the Defendants knew, or were reckless in not knowing, that the information relating to the

---

5. Scienter is not an element of claims brought pursuant to § 11 of the 1933 Act, under which "a plaintiff need only show a material misstatement or omission in a registration statement to establish a prima facie case." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683, 684, 74 L.Ed.2d 548 (1983). In addition, § 12(a)(2) of the 1933 Act does not require proof of scienter, providing that any person who "offers or sells a security ... which includes an untrue statement of a material fact or omits to state a material fact ... shall be liable."

evaporation of F & M's "deal" buying opportunities would be material and should be disclosed because potential investors could be discouraged from purchasing the Notes had they known about the adverse trend. As an example, Acree, in her Complaint, asserts that the Defendants:

> knew or should have known, by the date of the Offering, but failed to disclose, that (a) the Company was unable and/or unwilling to maintain its historical level of high volume, low cost purchases of merchandise through manufacturer 'deals', and (b) the reduction of such purchasing 'deals' would foreseeably (if not inevitably), and adversely, impact the Company's profit margins . . . .

(Complaint at ¶ 52) (emphasis added).[6] Based upon the validity of Acree's accusations, the Defendants' conduct would constitute recklessness. Under these circumstances, it is clear to this Court that Acree has pleaded scienter with sufficiency, inasmuch as Count IV alleges that the Defendants knowingly or recklessly approved the dissemination of offering materials that contained substantive omissions and misstatements.

### E. "Seller" Status

The Defendants contend that Acree's claim under 15 U.S.C. 77*l*(2) (i.e. Count II) should be dismissed because, in their collective opinion, she has not adequately alleged that they are "sellers" under this statute. Defendants' argument cannot be sustained.

■ In *Smith v. American Nat. Bank and Trust Co.*, 982 F.2d 936 (6th Cir.1992),

the Sixth Circuit Court of Appeals adopted the "seller" test in *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). In order to determine the status of a "seller," "[t]he test is . . . whether the defendant either passed title or offered to do so, or solicited an offer." *Id.* at 942. Applying the *Pinter* test to a claim under § 12(2) of the Securities Act of 1933, 15 U.S.C. 77*l*(2), the Sixth Circuit Court of Appeals found the complaint to have been deficient in alleging that the defendant had passed title of the stock or solicited the plaintiff. *Id.*

■ Applying *Smith* to the instant action, it is clear that Acree has sufficiently alleged that the Inside Director Defendants, Agley and Timmis, and the Underwriter Defendants had solicited her to purchase F & M Notes. In ¶ 117 of her Complaint, she alleges that "[e]ach defendant named in this Count *solicited* and/or was a substantial factor in the purchase by Plaintiff and the Class of F & M Notes." (emphasis added). In ¶ 118, she asserts that "[b]ut for the *solicitation* by the Defendants named in this Count as set forth above, the Offering could not and would not have been accomplished." (emphasis added). These statements, as well as the other language in Count IV of the Complaint, sufficiently identify the Defendants' participation in the solicitation of the Notes at issue.

### F. "Controlling Person" Liability

In Counts III and IV of her Complaint, Acree charges the Defendants with violations of Sections 77*o*[7] and 78t[8] of Title 15, Counts

---

**6.** *See also,* Plaintiff's complaint at ¶ 53 (Defendants knew or should have known that the above-mentioned facts and trends would negatively impact F & M's ability to successfully complete *its expansion plans* . . .); and Plaintiff's complaint at ¶ 68 (Defendants also knew or should have known, but failed to disclose, that the reduction or elimination of manufacture "deals" materially and negatively would (and did) impact F & M's competitive position).

**7.** 15 U.S.C. § 77*o* states that "[e]very person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77*l* of this title, shall

also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist."

**8.** 15 U.S.C. § 78t(a) holds that "[e]very person who, directly or indirectly, controls any person under any provision of this chapter or any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."

658

III and V, respectively. 15 U.S.C. § 77o sets forth liability of controlling persons. 15 U.S.C. § 78t(a) basically sets forth the same "controlling person" liability under the Securities Exchange Act of 1934 as 15 U.S.C. § 77o sets forth under the Securities Act of 1933.

Having determined that Acree's 15 U.S.C. § 77k and § 77l, and Rule 10(b)–5 claims should not be dismissed, these derivative counts must remain intact as well.

### G. Common Law Negligent Misrepresentation

Since Acree is pursuing this action on behalf of a "faceless" or an unresolved class of persons and has not alleged a special link, such as a fiduciary duty, to the Defendants, her negligent misrepresentation claim must fail in the context of this case.

█ The parties have correctly assumed that the law of Michigan will apply to this common law claim for negligent representation. (See Brief in Opposition at 32; and Brief in Support at 17 n. 10). In diversity suits or in claims that have been initiated under the supplemental jurisdiction of the federal court (as this claim is brought), the federal court is required to apply the same law as if the action had been brought in a state court where the federal court is located. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Holbrook v. Harman Automotive, 58 F.3d 222, 225 (6th Cir.1995). In Williams v. Polgar, 391 Mich. 6, 215 N.W.2d 149 (Mich.1974), "[t]he Michigan Supreme Court affirmed the Court of Appeals, adopting the tort of negligent misrepresentation in this [title abstracts] context." Consumers Power Company Securities Litigation, 105 F.R.D. 583, 596 (E.D.Mich.1985) citing Williams, 391 Mich. at 21, 215 N.W.2d 149. In Williams, the Court held that "[a title] abstractor is liable for negligent misrepresentation to third parties who foreseeably rely on the abstract." Consumers, 105 F.R.D. at 596.

Although Williams had applied negligent misrepresentation to title abstracts only, the court in Consumers declined to apply this tort in such a limited fashion. Instead, it held that Michigan courts could recognize negligent misrepresentation as a cause of action in a securities fraud case as long as this remedy "in no way threatens to open the floodgates of liability as feared by Judge Cardozo in Ultramares." 105 F.R.D. at 597 citing Mallis v. Bankers Trust Co., 615 F.2d 68, 82 (2d Cir.1980).[9]

█ Several parallels in Consumers can be found in the instant case. This lawsuit has been brought on the basis of material misrepresentations and omissions that appeared in offering materials in connection with the sale of securities. As in Consumers, the Defendants in the case at bar are members of the F & M board of directors and the underwriters of the Company. Acree has not alleged that she had a link with the Defendants which would be tantamount to privity, a bond so close to approach privity, or a fiduciary duty (on the part of Defendants). Her general allegation that Defendants had a duty to provide her with correct and proper information does not rise to the level of a fiduciary obligation.

As a result, Acree's common law negligent misrepresentation claim not cannot survive the Defendants' motion to dismiss for failure to state a claim upon which relief can be granted.

### IV

Accordingly, the Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is granted in part and denied in part. The parties are directed to begin discovery immediately.

IT IS SO ORDERED.

9. In Ultramares v. Touche, 255 N.Y. 170, 174 N.E. 441 (1931), Chief Judge Cardozo ruled that mere negligence should not render someone liable to a limitless group of potential plaintiffs. A link must be present between the plaintiff and defendant before common law negligent misrepresentation can be applicable, such as privity, a bond so close as to approach privity, or a fiduciary duty.