David S. **HAVENER** and Maria R. Havener, Plaintiffs,

v.

Jeffrey S. **RICHARDSON** and Constance Richardson, Defendants.

Civil Action No. 96–40487.

United States District Court, E.D. Michigan, Southern Division.

July 28, 1998.

David J. Franks, Bassey & Selesko, Southfield, MI, for Plaintiffs.

Keith James, Joseph K. Hart, Jr., Dawda, Mann, Bloomfield Hills, MI, for Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

In this lawsuit, plaintiffs David and Maria Havener ("the Haveners") allege fraudulent misrepresentation, innocent misrepresentation and fraudulent concealment in connection with the purchase of a home by them from defendants Jeffrey and Constance Richardson ("the Richardsons"). Presently before this court is the Richardsons' motion for summary judgment, on which a hearing was conducted Wednesday, June 24, 1998. Upon consideration of the parties submissions, the arguments advanced at the hearing, the record, and all the relevant authorities, this court will grant the defendants' motion for the reasons set forth below.

### FACTS

In April, 1996, Jeff Richardson, an executive for the Wellness Plan, accepted a promotion that required him and his wife, Constance, to sell their home at 3899 Meeting house in Livonia, Michigan and move to the State of Texas. The Richardsons listed their home through Century 21 Today Realtors and worked with a broker named Rachel Colvin.

Mr. and Mrs. Robert McMillan were the first persons to place an offer on the Rich-

ardsons' home. After making the offer, the McMillans arranged for Todd Strauss, a professional construction inspector, to inspect the Richardsons' home. Strauss inspected the home in the presence of Robert McMillan, Jeff Richardson and Rachel Colvin. During the inspection, Strauss noticed leaks in the basement walls. After explaining how to repair the leaks, Strauss was ordered by Robert McMillan to stop the inspection and the McMillans withdrew their offer on the home.[1]

Colvin then brought the Haveners to the Richardsons' home. Ultimately, on May 18, 1996, after a few visits to the home, the Haveners offered the Richardsons $162,000 for the home. The Richardsons accepted that offer on May 19, 1996. The purchase agreement contained an "as is" clause, which stated:

> This agreement supersedes any and all understanding and agreements and constitutes the entire agreement between the parties hereto and Realtor, and no oral representations or statements shall be considered in part hereof. Purchaser understands and acknowledges that he is purchasing a home in an "as is" condition and that neither the Seller nor Realtor makes any warranties as to the land and structure purchase or the condition thereof. Purchaser acknowledges that he has inspected the premises covered hereby and that he is satisfied with its conditions. Purchase acknowledges the receipt of a copy of this offer.

Prior to buying the home, the Haveners were given a Sellers Disclosure Statement ("SDS") prepared by the Richardsons. The SDS indicated that various items were in working order, including the garage door opener. The SDS also indicated that there had been water in the basement of the home due to a failed sump pump. No other water problems were disclosed on the SDS.

The Haveners did not have the home inspected before they purchased it. However, David Havener did make inquiries regarding various conditions of the home during various pre-purchase visits to the same. For instance, David Havener noticed cork board implanted on the kitchen ceiling and asked Rachel Colvin about this. Rachel Colvin, after inquiring of Jeff Richardson, told David Havener that the cork board was for aesthetic purposes only—Constance Richardson's "way of decorating." David Havener also noticed that in an area of the basement directly below the laundry room there was new wood in the ceiling. David Havener asked Rachel Colvin if there was a problem with water in this area such that the wood in the ceiling had to be replaced. Rachel Colvin, in turn, asked Jeff Richardson, who stated that the laundry room tub had overflowed causing water damage and that new wood was placed in the ceiling to repair water damage.

After moving into the home, the Haveners discovered faulty electrical wiring, an inoperable garage door opener and extensive water damage. The Haveners ultimately filed this action against the Richardsons claiming fraudulent misrepresentation, innocent misrepresentation and fraudulent concealment in connection with the sale of the home.

## *ANALYSIS*

### *SUMMARY JUDGMENT*

The Haveners are currently before the court seeking summary judgment on all the Haveners' claims pursuant to Federal Rule of Civil Procedure 56(c). This Rule empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no genuine issue of material fact when the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must decide "whether the evidence presents a sufficient

---

1. Plaintiffs make no claim in the instant lawsuit with respect to the allegedly "leaking basement walls" Strauss discovered during his inspection.

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir. 1994) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "The mere existence of some alleged factual dispute between the parties will not defeat the otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. In deciding a motion for summary judgment, the court must consider all evidence together with all inferences to be drawn therefrom "in light most favorable to the party opposing the motion." *Watkins v. Northwestern Ohio Tractor Pullers Ass'n., Inc.*, 630 F.2d 1155, 1158 (6th Cir.1980).

If the movant meets the standard specified at Rule 56(c), then the opposing party must come forth with "specific facts showing that there is a genuine issue for trial." *First National Bank v. Cities Serv. Co.*, 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); Fed.R.Civ.P. 56(e). The non-moving party "is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir.1993), *cert. denied*, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993); *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). And, "if the adverse party does not respond, summary judgment, if appropriate shall be entered against the adverse party." Fed.R.Civ.P. 56(e); *Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *O'Hara v. Wigginton*, 24 F.3d 823, 826–27 (6th Cir.1994).

### *FRAUDULENT MISREPRESENTATION*

■ Count I of plaintiff's complaint alleges that the Richardsons made several fraudulent misrepresentations. In order to succeed on this claim, the Haveners must prove the following six elements:

(1) the defendants made a material misrepresentation;

(2) the representation was false;

(3) when the defendants made the representation, they knew it was false, or made it recklessly without any knowledge of its truth and as a positive assertion;

(4) defendants made the representation with the intention that it should be acted upon by the plaintiffs;

(5) plaintiffs reasonably acted in reliance upon the representation; and

(6) the plaintiffs suffered a resulting injury.

*Scott v. Harper Recreation, Inc.*, 444 Mich. 441, 506 N.W.2d 857 (1993). In regard to the first element, the Haveners allege numerous material misrepresentations. Each one will be discussed separately.

■ The Haveners first contend that the Richardsons fraudulently represented that the "electrical system" and the garage door opener were "in working order" when these items were, in fact, not in working order. This court finds that the Richardsons are entitled to summary judgment on this claim as a matter of law. The Haveners have come forward with no evidence showing that the Richardsons knew the electrical system and/or remote control for the garage were other than in working order prior to the time they sold the home. Indeed, all evidence is to the contrary. For instance, during the inspection by Todd Strauss, which was completed ten days prior to the date the Haveners purchased the home, no problem was noted with respect to these items. Therefore, assuming the Richardson's were aware of the findings of Strauss' inspection, they would not have been made aware of any problem with the electrical system or garage door opener. In fact, at his deposition, David Havener conceded that he has no evidence that the Richardsons knew of such problems, but that he was merely speculating that the Richardsons did. (David Havener Dep. at 23).

■ The Haveners also allege that the Richardsons committed fraud when they failed to mention that the kitchen floor was water damaged. *M & D, Inc. v. McConkey*, 226 Mich.App. 801, 573 N.W.2d 281, 285 (1997) ("the suppression of a material fact, which a party in good faith is duty-bound to

disclose, is equivalent to a false representation and will support an action in fraud"). The Haveners contend that after they moved into the home, they discovered that the floor under the refrigerator was wet and soggy because there was no drip pan under the refrigerator. The Haveners also noticed, after moving into the home and removing the lament and tile in the kitchen in order to install hardwood floors, that there was other water damage to the kitchen floor. This court finds that this claim fails as a matter of law. The Haveners have offered absolutely no evidence showing that the Richardsons knew about the problems with the kitchen floor. In fact, at his deposition, David Havener conceded that he was "speculating" as to the Richardsons' knowledge of the allegedly damaged condition of the kitchen floor. (David Havener Dep. at 37). *Compare Shimmons v. Mortgage Corp. of America,* 206 Mich.App. 27, 520 N.W.2d 670 (1994) (question of fact as to defendant's knowledge of the uninhabitable condition of the house because prior to the sale of the house, the Grand Blanc Township Building Department declared the house uninhabitable and issued to defendant a repair notice and order).

In addition to the above two conditions, the Haveners claim that the Richardsons defrauded them by failing to mention that the living room floor was water damaged. The Haveners assert that when they removed carpeting in the living room after moving into the home, they noticed water damage to the wood floor underneath. This court finds that the Haveners' claim in this regard fails. The Haveners have adduced no evidence showing that the Richardsons knew of water damage to the living room floor. Nor have they adduced any evidence from which a jury could infer such knowledge. For instance, the Haveners have introduced no evidence showing that the Richardsons placed carpeting in the living room. If the Haveners had proffered such evidence, then perhaps a juror could infer that the Richardsons did so to conceal water damage to the floor underneath. *See Clemens v. Lesnek,* 200 Mich. App. 456, 505 N.W.2d 283 (1993) (genuine issue of material fact as to whether defen-

dant-sellers fraudulently concealed a faulty septic system when plaintiffs-buyers offered evidence that piping was not original to the septic system but had been replaced by the sellers).

The Haveners also allege that the Richardsons fraudulently misrepresented the condition of the kitchen ceiling. The Haveners claim that after moving into the home and removing corkboard on the ceiling they noticed a hole, eight to nine inches in diameter, which was leaking water from the upstairs bathroom. Prior to purchase, David Havener asked about the corkboard and was informed that the corkboard on the kitchen ceiling served a decorative purpose only. This court finds that the Haveners' claim of fraudulent misrepresentation in this regard fails as a matter of law. The doctrine of caveat emptor is applicable here. Under that doctrine, buyers bear the risk of loss under an "as is" sales contract for any harm due to defects existing at the time of the sale that could have been discovered by the buyers upon reasonable inspection. *Clemens v. Lesnek,* 200 Mich.App. 456, 505 N.W.2d 283 (1993); *Lorenzo v. Noel,* 206 Mich.App. 682, 522 N.W.2d 724 (1994). *See also Urban v. Thibault,* No. 180978 (Mich.App., Oct. 8, 1996) (holding that caveat emptor shielded defendants from liability for defects in the roof and noting that plaintiff did not take the opportunity to have the home professionally inspected before purchase); *Conahan v. Fisher,* 186 Mich.App. 48, 463 N.W.2d 118 (1990) (plaintiffs' termite expert stated that 'a competent inspector qualified to make recommendations regarding structural soundness for residences should reasonably have been expected to have discovered evidence of active termites in that home' and thus caveat emptor applied to a claim by purchaser against seller for termite problem). In this case, it is undeniable that the Haveners could have discovered water damage to the kitchen ceiling upon reasonable inspection. David Havener testified that the ceiling was "wet to the touch" and thus all the Haveners needed to do was touch the ceiling to discover the leak.[2] (David Havener Dep. at 71).

2. An exception to the rule of caveat emptor exists

for latent defects which are fraudulently con-

■ The last alleged fraudulent misrepresentation made by the Richardsons concerns the condition of the laundry room floor/basement ceiling. Prior to the date of purchase, David Havener noticed that in the ceiling of the basement, in the area directly below the laundry room, there was "a section of new wood placed in there, [ ] different from the existing wood that was around it." (David Havener Dep. at 55). When David asked Rachel Colvin whether there had been a problem with water in that area such that a portion of the ceiling had to be replaced, Colvin, in turn, asked Jeff Richardson. Jeff indicated that the laundry tub had overflowed and that wood had been replaced in the area of the ceiling directly below the laundry room. (David Havener Dep. at 55). Jeff further stated that there were no other problems or repairs to be made. (David Havener Dep. at 55). When the Haveners moved into the home, they made further repairs to the laundry room floor/basement ceiling and therefore they claim that the Richardsons' misrepresented the condition of the laundry room floor/basement ceiling. This court finds that this claim of fraudulent misrepresentation fails just as do all the others. Caveat emptor is applicable to this problem. The Haveners admitted discovering the damage to the laundry room floor prior to purchase. Thus, there was no fraudulent misrepresentation by the Richardsons.

For all the foregoing reasons, this court will dismiss the Haveners' claim of fraudulent misrepresentation.

### *INNOCENT MISREPRESENTATION*

■ Plaintiffs also bring a claim of innocent misrepresentation. In order to succeed on this claim, plaintiffs must prove the following:

(1) the defendants made a representation of a material fact(s), not a mere omission(s);

(2) the representation was made in connection with the making of a contract between plaintiffs and defendants;

(3) the representation was false when it was made;

(4) plaintiffs would not have entered the contract if defendants had not made the representation;

(5) plaintiffs had a loss as a result of the contract, and;

(6) plaintiff's loss benefitted the defendants.

Michigan S.J.I.2d 128.04. *See also Platsis v. E.F. Hutton,* 946 F.2d 38 (6th Cir.1991).

■ The exact same representations comprising plaintiffs' claim of fraudulent misrepresentation make up plaintiffs' claim of innocent misrepresentation. Thus, the analysis for the claim of innocent misrepresentation parallels the analysis for the fraudulent misrepresentation claim. For the same reasons that this court will dismiss the Haveners' claim of fraudulent misrepresentation in its entirety, this court will also dismiss the Haveners' claim of innocent misrepresentation.

### *FRAUDULENT CONCEALMENT*

■ Plaintiffs' third and final claim is one of fraudulent concealment. Specifically, plaintiffs allege that defendants fraudulently concealed water damage to various places in the home, including the kitchen ceiling, laundry room floor, kitchen floor and living room floor. The analysis for this claim dovetails the analysis for plaintiffs' claims of fraudulent and innocent misrepresentation. For the same reasons that those claims will be dismissed, so too will plaintiffs' claim of fraudulent concealment also be dismissed.

### *CONCLUSION*

In sum, the Richardsons cannot be held liable under a theory of fraudulent misrepresentation, innocent misrepresentation or

cealed. *Clemens,* 200 Mich.App. at 460, 505 N.W.2d 283. *See also Conahan v. Fisher,* 186 Mich.App. 48, 49–50, 463 N.W.2d 118 (1990). In this case, while there may be a question of fact as to whether the Richardsons placed corkboard on the ceiling to conceal defects (i.e., water dam-

age and a hole in the ceiling), there is no question of fact as to the latency of those defects. The undisputed evidence shows that those defects were patent. They could be discovered upon merely touching the ceiling.

fraudulent concealment for defects of which they did not know. Therefore, the Haveners' claims pertaining to the electrical wiring, the faulty garage door opener, the kitchen floor and the living room floor must be dismissed since the Haveners have come forward with no evidence showing that the Richardsons knew of any defects with these items prior to selling the home. The Richardsons likewise cannot be held liable for defects reasonably discoverable upon inspection. Since no reasonable juror could find otherwise than that the defects in the laundry room floor and kitchen ceiling were reasonably discoverable upon casual inspection, the Richardsons are entitled to summary judgment on plaintiffs' claims with respect to these items.

## ORDER

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment is GRANTED and the case is dismissed with prejudice.

**SO ORDERED.**